BERTHA GREENBURG *vs.* STOEHRER & PRATT DODGEM CORPORATION.

SAME *vs.* SAME.

Suffolk.    October 20, 21, 1924. — December 19, 1924.

Present: RUGG, C.J.; BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Contract,* Abrogation, Rescission, Construction, Performance and breach. *Damages,* For breach of contract. *Agency. Frauds, Statute of. Practice, Civil,* Auditor's report, Exceptions. *Estoppel.*

A saleswoman made, with a corporation manufacturing an amusement device in the form of a motor car, a contract in writing to continue for one year and which provided in substance that the corporation would pay her $1,000 as commission for each set of fifteen cars "sold by her at the sum of" $15,000, the following acts by her "being sufficient to entitle her to any sums of money which may be due her as herein provided," namely, if she should make an appointment for the consummation of a contract of sale between a prospective purchaser and the corporation, or if she should notify the corporation by mail or telegram of the intention of a prospective purchaser solicited by her for the purpose of consummating a contract of sale. She also was to have additional compensation of ten per cent "on all monies received" for cars beyond a set of fifteen sold to any purchaser. The corporation was not to be responsible for any expenses incurred by her. While the contract was in force, she made another contract in writing with a firm, acting as an agency selling cars for the same corporation, by which she entered

that firm's employ, was to receive all her expenses from them, only one half of what she was entitled to receive for the sale of a set of fifteen cars from the corporation, and a greater sum than she received from the corporation for sales beyond a set of fifteen. The making of the second contract was known to and was urged upon her by a managing officer of the corporation, who pointed out to her advantages she would receive from making the second contract, that thereby a conflict or confusion of agencies might be avoided, that she could not "go wrong" as she always had her "old contract" to fall back upon. There was no exclusive feature in either contract. In an action by her against the corporation for commissions alleged to have been earned under the contract with it, it was *held* that

(1) In the circumstances, it could not be ruled as a matter of law that the contract with the defendant was rescinded or abrogated by the making of the contract with the agency firm;

(2) In view of the evidence, the principle that one who acts in a representative capacity is not permitted in the performance of his duties to put himself in a position antagonistic to the interests of those whom he represents, was not pertinent;

(3) On evidence tending to show that a representative for a prospective purchaser called on the plaintiff; that she showed him a set of cars; that she notified the defendant that she had been asked by the representative to prepare a contract of sale; that she prepared the contract, which was signed by her for the defendant and by the representative for the purchaser; and that the representative made a deposit which was forwarded to the defendant, a finding for the plaintiff for a commission was warranted;

(4) On evidence tending to show that, after the plaintiff had shown a set of cars to a prospective purchaser, he told her he wanted to buy but that he could get better terms from the defendant's manager through a third person, that the plaintiff informed the manager of the prospective purchaser, that the manager gave the third person a lower price, and that he bought ten cars and transferred them to the prospective purchaser, a finding was warranted that the plaintiff was the efficient cause of the sale and that the prospective purchaser was the real party in interest;

(5) It appearing that one of the sales made by the plaintiff and for which she claimed a commission was for a ten-car set and that there was a finding for the plaintiff for a commission on evidence warranting a finding that she was the efficient cause of the sale, it was too late for the defendant for the first time in this court to contend that the plaintiff could not recover that commission because the sale was for a set of ten cars only, whereas the contract provided a commission only in case a set of fifteen cars was sold;

(6) On evidence tending to show that, after unsuccessful solicitation of the manager of an amusement park by the plaintiff and by the agency firm, the defendant's manager asked the plaintiff, when she and he and the members of the agency firm were together in the city where the park was, to use her influence to get the contract signed, that she then saw the assistant manager and then the manager of the park, and he promised to give her a contract; that she then notified the defendant of

that fact, called with the defendant's manager on the park manager the next morning, and procured the contract and a deposit, a finding for the plaintiff for a commission on such sale was warranted;

(7) On evidence tending to show that the plaintiff procured the sale of a set of twenty cars to one who made a deposit thereon and then immediately cancelled his contract and forfeited his deposit, a finding was warranted that the plaintiff earned a commission on the sale under the contract of a set of fifteen cars, but that she could not recover a commission on the sale of the additional five cars because such commission, by her contract with the defendant, was earned only if the defendant received the money for such additional cars, and the defendant had not received anything therefor;

(8) On evidence tending to show that the plaintiff had earned a commission for the sale of a certain set of cars and had charged it to the agency firm under her contract with them; that she had so stated in a statement rendered to the defendant; and that the defendant had paid her one half of the commission, charging it to the agency firm, the plaintiff could not recover further from the defendant on an alleged oral promise to pay her, the debt being that of the agency firm and no promise of the defendant sufficient to satisfy the statute of frauds appearing;

(9) All the evidence at the trial not being reported in the record, exceptions by the defendant to refusals by the trial judge to rule that, an auditor having found favorably to the defendant, findings favorable to the plaintiff were not warranted, must be overruled;

(10) It appearing that the plaintiff was entitled to operate both under her contract with the defendant and under that with the agency firm, she was not, as matter of law, estopped to claim commissions from the defendant for certain sales merely because she previously had allotted those sales to the agency firm.

Evidence at the trial above described tended to show that after the signing by a certain purchaser of a certain contract for sale of seventy-five cars, the defendant's manager wrote the plaintiff: "I called on you for help in both cases, so of course acknowledge my indebtedness and am pleased to pay you"; that, a check given by purchaser proving worthless, he had further negotiations with the defendant's manager when a new contract for the sale of twenty cars, and of fifty-five cars to be shipped at a later date, was made; that the defendant's manager then wrote to the plaintiff that he had received $750 as a deposit thereon and expected to receive $6,250 on shipment of a car, and that when he received "this amount from him in 15 days I will credit you with commission on same"; that, later and within the period of the plaintiff's contract with the defendant, a contract was made with the purchaser for the sale of a set of twenty cars and a still later sale of further cars, making in all one hundred and thirty-five at a price amounting to $94,500. The defendant never received more than $7,000 from the purchaser. *Held,* that

(1) In view of the letter of the defendant's manager to the plaintiff, an exception by the plaintiff to an instruction to the jury that if they found "that the defendant is liable to the plaintiff for the sale of a ride

[set] to . . . [the purchaser] then they must find that the defendant is only liable to her for a sale of twenty cars," must be overruled;

(2) The defendant not having received payment for any cars beyond fifteen, the plaintiff could not recover more than $1,000.

At the trial of an action upon a contract in writing which is free from ambiguity, a ruling "That if the true import and meaning of an instrument in writing cannot be determined from its language, it must be construed most strongly against the party using the uncertain language," is inapplicable.

If an auditor to whom an action at law has been referred makes findings favorable to the defendant, and the auditor's report is introduced as evidence at the later trial of the action and there is no other evidence controlling findings by the auditor, it is proper to order a verdict for the defendant.

TWO ACTIONS OF CONTRACT for commissions alleged to have been earned under the provisions of a contract in writing for the sale of "Dodgem Rides," described in the opinion. Writs dated August 2, 1921, and July 12, 1922.

The claims of the plaintiff in the declaration in the first action are described in the following items:

| | | | | | |
|---|---|---|---|---|---|
| "1. | Milford Stern | Detroit | 7 | cars | $ 490.00 |
| 2. | Tonner | England | 135 | ,, | 9,400.00 |
| 3. | Bertram Mills | ,, | 15 | ,, | 1,000.00 |
| 4. | Humphrey | Cleveland | 30 | ,, | 1,750.00 |
| 5. | Rizk | Providence | 10 | ,, | 666.66 |
| 6. | Neble | Star Light Park | 15 | ,, | 1,000.00 |
| 7. | House | Venice, Cal. | 30 | ,, | 2,050.00 |
| 8. | Aeschbach | Columbia Park | 20 | ,, | 1,350.00 |
| 9. | Securing location at Luna Park | Coney Island | | | 500.00 |
| 10. | Luna Park | | 1 | ride | 1,350.00 |
| 11. | Riverview Park | | 30 | cars | 2,050.00 |
| 12. | Smith & Terry | Idora Park | 15 | ,, | 1,000.00 |
| 13. | Carnaise, N. Y. | | 1 | ride | 1,350.00 |
| 14. | Securing location at Carnaise Park | | | | 500.00 |
| 15. | Hinkelday | Columbia Park | 20 | cars | 1,350.00 |
| 16. | Cleveland through House | | 20 | ,, | 1,350.00 |
| 17. | Dominion Park | | 20 | ,, | 293.75 |

$27,450.41"

There were twenty-one additional items of claim under the declaration in the second action.

The actions were referred to an auditor, who heard them together. After the auditor's report was filed, the actions were tried together in the Superior Court before *Fox,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. That from and after December 10, 1920, the contracts which the plaintiff had made with the defendant corporation and with Miller and Baker could not both be subsisting and in operation.

"2. That upon all the evidence the court must rule that the plaintiff upon entering into a contract with Miller and Baker for a similar kind of service as that previously given under contract to the defendant, rescinded her original contract with the defendant.

"3. That the court must rule that the action of the plaintiff in entering into a contract with Miller and Baker for service similar to that previously rendered to the defendant, the receiving by her from Miller and Baker of the expenses provided for in her contract with them, the crediting by her to Miller and Baker of the sales alleged to have been made by her on one Tonner, Neble and Dominion Park as set forth in her testimony and shown in the auditor's report and the receipt by her of the sum of $87.50 from the defendant in addition to the compensation provided in her contract with Miller and Baker on the foregoing four sales, constituted a rescission or relinquishment or abandonment of her original contract with the defendant.

"4. That prior to August 16, 1921, the plaintiff and Miller and Baker were the only persons engaged in the sale of Dodgem cars.

"5. That prior to December 10, 1920, the defendant had given no exclusive agency for the sale of Dodgem cars.

"6. That the jury must find that on December 10, 1920, Miller and Baker were given an exclusive agency for the sale of Dodgem cars with knowledge of same on the part of the plaintiff.

"7. That the statement rendered by the defendant on February 22, 1921, shows by its terms and contents a relinquishment of the original contract with the defendant.

"8. That the oral agreement made on December 10, 1920 between the plaintiff and the defendant for the payment by the defendant to the plaintiff of the sum of $87.50 on the sale by her of a twenty car ride in addition to the compensation to be paid to her for such sale by Miller and Baker clearly shows the relinquishment by her of her original contract with the defendant.

"9. That the finding of the auditor that during the period from December 10, 1920, to August 6, 1921, the plaintiff was operating under both contracts, is erroneous as a matter of law.

"10. That during the period of time from December 10, 1920 to August 6, 1921, the plaintiff rendered to Miller and Baker a statement of the expenses incurred by her under the contract with them.

"11. That at no time during the period of time from December 10, 1920, to August 1, 1921, the time of the conference at Salisbury Beach, did the plaintiff communicate either to Miller and Baker or to the defendant that she was operating under the contract with the defendant and with said Miller and Baker.

"12. That the contract of the plaintiff with Miller and Baker on the testimony of the plaintiff herself, was in operation and effect to and including August 16, 1921.

"13. That on the testimony of the plaintiff herself, the firm of Miller and Baker was never advised that she had terminated their contract with her, that she was no longer working for them under their mutual contract or that she would not consider that the rides sold by her should enure to their benefit.

"14. That upon all the evidence the court must rule that the plaintiff having charged her expenses to Miller and Baker during the time that sales on which she is claiming a commission in this action were made, must look to Miller and Baker for the payment of said commissions.

"15. That the court must rule that the plaintiff, having

charged her expenses to Miller and Baker and having received certain payments on said expenses, cannot refuse to render to Miller and Baker, the sales or the benefit of sales made by her during the time in which expenses were incurred.

"16. That the plaintiff has not the right at her own option without notification to Miller and Baker or to the defendant to withhold the full performance of said contract between herself and the said Miller and Baker.

"17. That the plaintiff, having entered into said contract with Miller and Baker, said contract being one of employment, is estopped to set up any adverse claims or interests to the rights of said Miller and Baker.

"18. That upon all the evidence the sale to George V. Tonner was made by the said plaintiff under her contract with Miller and Baker and she cannot recover therefor in this action.

"19. That in a statement rendered to the defendant's treasurer on February 22, 1921, the plaintiff set forth that the first sale made to said George V. Tonner was made under her contract with Miller and Baker and the Court must rule that any claim for cars sold to said Tonner must arise under said Miller and Baker contract.

"20. That the assertion by the plaintiff in this suit of a claim for commission on cars sold to said Tonner, independent of said contract with Miller and Baker, is in violation of and in fraud upon the rights of said Miller and Baker and therefore unenforceable.

"21. That the incidental expenses incurred by the said plaintiff in connection with the sale of seven cars to one Milford Stern having been charged by her to said Miller and Baker it must be ruled that the said sale was made by her under her contract with Miller and Baker and that no commission on said sale is due to her from the defendant.

"22. That the claims of the plaintiff for commissions on the items one to seventeen inclusive, as set forth on page 2 of the auditor's report being independent of her contract with said Miller and Baker, in fraud upon their rights and therefore unenforceable in this action.

"23. That the letter of February 8, 1921, from A. R. Hodge to Ralph Pratt enclosing contract and the telegram of Ralph Pratt to A. R. Hodge of February 11, 1921, the contents all taken together, constituted a binding contract for the sale of a Dodgem ride at Riverview Park.

"24. That the defendant is not liable to the plaintiff for a commission, for the sale of a Dodgem ride at Riverview Park.

"25. That upon all the evidence the sale of a Dodgem ride for Venice Pier, California, was consummated by the negotiations between Ralph Pratt and one Cleveland.

"26. That the defendant is not liable to the plaintiff for commission on the sale of a Dodgem ride to George J. Cleveland.

"27. That the plaintiff has not overcome the *prima facie* presumption of a lack of liability on the part of the defendant for the payment of a commission to the plaintiff for the ride sold to George J. Cleveland.

"28. That if it shall be found by the jury that the plaintiff actually received a signed contract from George A. Schmidt for a sale of cars at Riverview Park, such manual receipt does not entitle her to a commission on said sale.

"29. That there is no evidence in this case that Paul D. Howse had any authority, actual or implied, to close any contract for George F. Cleveland with the defendant."

"32. That no rides were sold by the defendant for installation at Luna Park or Canarsie.

"33. That the plaintiff cannot recover a commission on rides installed at Luna Park and Canarsie under the declaration in this case.

"34. That by no agreement was the defendant excluded from selling Dodgem rides directly to customers who had not been solicited by the plaintiff or by Miller and Baker.

"35. That if it be found by the jury that the defendant is liable to the plaintiff for the securing of a location at Luna Park, said liability cannot be for a sum greater than $500."

"38. That the sale made by Greenburg to Dominion Park, was made under her contract with Miller and Baker and that any commission due her therefor is due from Miller and Baker.

"39. There is no writing, properly signed wherein the defendant agreed to pay to the plaintiff any debts or demands owed to her from said Miller and Baker.

"40. That sufficient evidence has not been introduced by the plaintiff on the item relating to Dominion Park to overcome the *prima facie* presumption in favor of the defendant on the report of the auditor."

"43. That the plaintiff having elected to sell two rides in January, 1921, to Arnold Neble as an employee or agent of Miller and Baker, is estopped to assert that a ride sold by her to said Neble in June, 1921, and during the existence of said Miller and Baker contract, was sold by her independently of said contract.

"44. That the defendant is not liable for a commission on sale of fifteen cars to Arnold Neble in June, 1921, to the plaintiff.

"45. That the action of the plaintiff, in endeavoring to secure locations for herself and for the defendant during the pendency of her contract with Miller and Baker, was in violation of the rights of said Miller and Baker and she cannot recover in this action for such services."

The defendant also asked for the following rulings which were unnumbered in the record:

"That the plaintiff is not entitled to a commission on the sale of fifteen cars to one Chris Hinkelday."

"That sufficient evidence has not been introduced by the plaintiff on the item relating to Chris Hinkelday to overcome the *prima facie* presumption in favor of the defendant on the report of the auditor."

"That the defendant not having received from one Aeschbach the full purchase price called for in said sale to him and the sale to him having been cancelled, if the jury shall find that the defendant is liable to the plaintiff for a commission on said sale, said liability cannot be for a sum greater than $1,000."

The defendant also asked for the following additional rulings:

"1. That if the jury shall find that the defendant is liable to the plaintiff for the sale of a ride to one Tonner, then it

must find that the defendant is only liable to her for a sale of twenty cars.

"2. That the telegrams and correspondence between Ralph Pratt and George J. Cleveland constituted the contract for the sale of a ride by the defendant to said Cleveland.

"3. That any representations made by Ralph Pratt to the plaintiff prior to the execution of a contract between the plaintiff and Miller and Baker with reference to what Miller and Baker would do for her, cannot be taken into consideration in this case.

"4. That the defendant or its officers had no authority to abrogate, suspend or alter the contract between the plaintiff and said Miller and Baker.

"5. That the breach by Miller and Baker of any part of their contract with the plaintiff did not cause a revival of the contract between the plaintiff and the defendant, if it is found by the jury that the plaintiff did, in fact, give up said contract.

"6. That under the original contract with the defendant, the plaintiff was not entitled in the event of a sale of cars greater in number than fifteen, to a commission on such extra cars, until the defendant had been in fact paid for such excess by the purchaser."

"9. That under the agreement between the plaintiff and defendant the plaintiff was not entitled to a commission on sales made by the defendant unless she was the efficient cause of said sale or sales.

"10. That in order for the plaintiff to recover a commission on sales made by the defendant she must show affirmatively that she complied with all the requirements of her contract in the making of such sale.

"11. That the sale of a ride to Charles Nabham and the transfer by him of said ride for the consideration of $800 to one George Riszk, does not entitle the plaintiff to a commission for the same to said Riszk."

The plaintiff asked for the following ruling:

"2. That if the true import and meaning of an instrument in writing cannot be determined from its language, it must be construed most strongly against the party using the uncertain language."

The judge gave the following rulings asked for by the defendant: 34; additional 1, 4–6, 9, 10. He refused to give the other rulings requested by the defendant. He refused to give the ruling numbered 2 asked by the plaintiff. He ordered a verdict for the defendant in the second action. In the first action, there was a verdict for the plaintiff in the sum of $11,525.35.

Both parties alleged exceptions in the first action, each filing a separate bill. The plaintiff alleged exceptions in the second action. After the death of *Fox*, J., exceptions by the defendant were allowed by *Qua*, J., and those by the plaintiff by *N. P. Brown*, J.

*W. Hirsh*, for the plaintiff.

*J. A. Donovan*, (*W. Coulson & J. M. Hargedon* with him,) for the defendant.

CROSBY, J. These are two actions of contract to recover commissions alleged to have been earned by the plaintiff under a written contract dated August 16, 1920. They were consolidated and referred to an auditor who in the first case (numbered 134,562 on the docket of the Superior Court) allowed certain claims of the plaintiff and disallowed the others; and in the second case (numbered 143,412 on the docket of the Superior Court) found for the defendant. The sums so allowed amounted to $7,781.66; the auditor deducted two payments of $1,000 each, leaving a balance of $5,781.66, which he found the plaintiff was entitled to recover with interest. The cases were afterwards tried together before a jury in the Superior Court; in the first case a verdict was returned for the plaintiff in the sum of $11,525.35; in the second case the court directed a verdict for the defendant. The cases are before us on exceptions taken by the plaintiff and the defendant to requests given and refused by the trial judge in the first case, and to exceptions taken by the plaintiff in the second case.

The defendant is a corporation which manufactures an amusement device known as the " Dodgem." The " Dodgem " consists of a contrivance in the nature of a small, circular automobile containing a motor; the machine seats two persons and is operated and controlled by the passenger.

A set of fifteen such cars constitutes what is known as a " ride." These rides operate on a smooth surface in an enclosed area, and, it appears, are in use in a number of amusement parks throughout the country. One Pratt was the treasurer, general manager and principal business agent of the corporation. The contract under which the respective rights and obligations of the parties are to be governed was dated August 16, 1920, and was to continue for one year thereafter. Material portions of the contract are as follows:

" The party of the first part hereby agrees to pay the party of the second part the sum of One Thousand dollars (1000.00) as commission for each fifteen car Dodgem ride, so called, sold by her at the sum of fifteen Thousand dollars (15000.00): — the following acts by the said party of the second part being sufficient to entitle her to any sums of money which may be due her as herein provided, namely: — the party of the second part shall make an appointment for the consummation of a contract of sale between the prospective purchaser and the party of the first part, or the party of the second part shall notify the party of the first part by mail or telegram of the intention of a prospective purchaser solicited by the party of the second part for the purpose of consummating a contract of sale. The party of the first part further agrees to pay the party of the second part a sum equal to 10 per cent on all monies received on any contract of sale solicited by her as above mentioned over and above fifteen Thousand dollars.

" The party of the first part further agrees to pay to the said party of the second part a sum equal to 10 per cent on any cars which may be sold by said party of the first part to any purchaser solicited by her in addition to original ride sold said purchaser at any time within one year from date of the original sale to said purchaser.

" The party of the first part agrees to pay to the party of the second part any monies due her as hereinbefore provided in the following manner: namely; one half of said sum upon signing of any contract of sale with any purchaser as above provided; and a note for the balance payable 45 days after date of signing of said contract of sale.

" The party of the first part is not to be held responsible for any expenses incurred by the said party of the second part in connection with the sale of the Dodgem ride."

As all the questions involved arise under this contract they may be considered in one opinion.

### FIRST CASE.

The auditor made specific findings on each of the seventeen items contained in the schedule annexed to the plaintiff's declaration in the first case, allowing some of them and disallowing others. The trial in the Superior Court was upon the auditor's report and other evidence; some but not all of the evidence was reported.

While this contract was in force, namely, on December 10, 1920, the plaintiff entered into another agreement with a firm known as Miller and Baker, which at that time was also an agent of the defendant in the sale of Dodgems on commission. This contract by its terms was to remain in force until August 15, 1921, substantially the time when the contract between the plaintiff and the defendant would expire. The plaintiff entered the employ of Miller and Baker as agent for the purpose of selling Dodgems manufactured by the defendant; by the terms of this contract she was to receive for her services for each fifteen car ride sold by her the sum of $500, and in case of a sale of a twenty car ride she was to receive $587.50 and in addition thereto five per cent on the purchase price of any ride in excess of twenty cars " and at the same rate for any sale of exclusive right." All travelling expenses of the plaintiff incurred by her in endeavoring to effect any sale were to be paid by Miller and Baker. She was also to be paid five per cent on the purchase price on any cars which might be sold to any purchaser, " in addition to original ride sold said purchaser at any time within one year from the date of said original sale to said purchaser." This contract contained other provisions which it is unnecessary to refer to.

It is the contention of the defendant (1) that its contract with the plaintiff was abrogated or rescinded when she entered into the contract with Miller and Baker, and (2)

that apart from having entered into the second contract the plaintiff is not entitled to certain commissions claimed by her for the reason that she did not sell the rides in conformity with her agreement with the defendant.  ·

Under the second contract the plaintiff was to receive only about one half what she was entitled to get from the defendant on the sale of a fifteen car ride, but she was to receive all her expenses from Miller and Baker, and in the event of a sale of twenty cars she was to receive $87.50 from the latter and $87.50 from the defendant which it had agreed orally to pay as an inducement to her to sign the contract with that firm.

For these reasons and upon other evidence the defendant contends that the second contract was inconsistent with that previously entered into with the defendant whereby as matter of law the original contract was rescinded; that by entering into the second contract the plaintiff undertook to " serve two masters "; and that such action was detrimental and adverse to her principal, the defendant. We are of opinion that, in view of all the evidence, this contention cannot be sustained. There was evidence that the second contract was entered into by the plaintiff at the request of Pratt, the defendant's treasurer and general manager, who had full knowledge of the facts. The plaintiff testified that Pratt told her in substance that, as she and Miller and Baker were at times seeing the same prospective customer, confusion resulted; that he was anxious to have her enter into the second contract; that he said to her, " Another thing, you can't go wrong. You have always got your contract you can fall back on. Go out and try it. You have nothing to lose. . . . You have always got your old contract to fall back on, and I will appreciate it if you will get together with them."

The auditor found that, when the plaintiff was finally induced by the defendant to enter into the second contract, Pratt told her it would be greatly to her advantage to do so as the Pratt Company would not pay her expenses and Miller and Baker would; that owing to the experience and extensive acquaintance of that firm it was in a much better

position than the defendant to furnish her with " live leads," by which is meant in the trade " more than merely possible customers "; that in addition to her commissions in the sale of Dodgems, she could materially increase her income by the sale of Miller and Baker's other amusement devices; that such contract might end the conflict of agents; that nothing was said at this conference that by making the second contract her contract with the defendant should become abrogated, or that she surrendered any rights thereunder; that on the contrary Pratt gave her to understand that her proposed contract with Miller and Baker " would be merely in the nature of an experiment," and that if she found it unsatisfactory she could have her contract with the defendant to fall back upon. After the second contract was made, the plaintiff testified, " I wrote to Miller and Baker and told them I was writing to prospects, and told them I was representing both the Stoehrer & Pratt Company and Miller and Baker, and then I also wrote the prospects that way." She further testified that the firm of Miller and Baker failed to perform its contract with her in that it never gave her any " live leads " where she could go and close up quick sales; and that soon after the contract was executed it failed to pay her travelling expenses and was continually indebted to her therefor and still owes her over $1,200 on that account. It is earnestly argued by the defendant that as the plaintiff was to receive her travelling expenses under the second contract that the contract with the defendant was terminated. Although this was a circumstance to be considered, it could not be ruled as matter of law that the original contract was thereby abrogated. It is manifest that upon this evidence the jury could have found that the defendant, as well as Miller and Baker and prospective customers, knew that the plaintiff was acting under both contracts, and that the defendant recognized her right to do so.

It does not appear from either contract that the plaintiff was restricted as to territory within which she might make sales, or that she acted as an exclusive agent of either the defendant or Miller and Baker. The auditor found that by a contract dated September 14, 1920, the defendant made

Miller and Baker its agent, and thereafter " had continuously a half a dozen agents besides Greenburg and Miller and Baker in the field selling Dodgems, each unrestricted as to territory." It is plain that it could not properly have been ruled that the plaintiff's contract with the defendant was abrogated by reason of the making of the second contract, or because of the oral agreement under which the defendant promised to pay her $87.50, previously referred to. The principle that one who acts in a representative capacity is not permitted in the performance of his duties to put himself in a position antagonistic to the interests of those whom he represents, in view of the evidence in the present case, is not pertinent. See *Quinn* v. *Burton,* 195 Mass. 277, and cases cited. It follows that the defendant was not entitled to a ruling that it had proved an affirmative defence. The defendant's requests 1 to 22 both inclusive, 43, 44, 45 and additional request 3, so far as they are requests for rulings of law, were rightly denied, and the defendant's exceptions to the refusal to give them must be overruled.

It is also the contention of the defendant that, if the plaintiff had a right to operate under both contracts, she is not entitled to certain commissions claimed because she did not make such sales in conformity with the agreement. The transactions upon which she contends that she was entitled to a commission and with reference to which the defendant requested certain rulings at the trial before the jury are dealt with separately by the auditor and will now be considered.

In April, 1921, a twenty car Dodgem ride was sold to George J. Cleveland at a cost of $14,000. After the original contract between the plaintiff and defendant had been made, it was modified to the extent that the plaintiff should receive a commission of $1,000 on each fifteen car ride sold by her for $10,500. The auditor found that the plaintiff was not entitled to a commission on this sale. There was evidence that Cleveland sent one House, his associate in business, to New York to look at a Dodgem ride that had been installed there; that House called on the plaintiff; that she showed him the ride and notified the defendant that House had asked her to prepare a contract, which she did; that the

contract was signed by the plaintiff, representing the defendant, and by House, representing Cleveland; and $500 was paid by House to the plaintiff and forwarded by her to the defendant. This evidence warranted a finding that the plaintiff was the efficient cause of the sale. The defendant's requests 25, 26, 27, 29, and 2 of the additional requests were rightly denied.

The plaintiff claimed a commission on a ride sold to one Riszk. The plaintiff showed the ride to Riszk who told her he was ready to buy but wanted to know the terms. He told her that one Nabham was friendly with Pratt and that he thought Nabham could get better terms from Pratt. She wrote Pratt informing him of Riszk's call and that she had shown him a ride; afterwards Pratt gave Nabham a lower price and he bought ten cars and turned them over to Riszk. The auditor found that the plaintiff was entitled to a commission on this sale. The jury were warranted in finding that she was the efficient cause of the sale and that Riszk was the real party in interest. The defendant requested the court to rule " That the sale of a ride to Charles Nabham and the transfer by him of said ride for the consideration of eight hundred dollars ($800.00) to one George Riszk, does not entitle the plaintiff to a commission for the same to said Riszk." The defendant now contends that as the plaintiff's right to recover under the contract was limited to a sale of fifteen rides, and as this sale was for only ten, that she cannot recover. This question, however, does not seem to have been raised at the hearing before the auditor or when the case was tried in the Superior Court. The request for ruling in substance is that because the sale was made to Nabham, who transferred the ride to Riszk, the plaintiff cannot recover. If the defendant desired to raise the question that the sale was not within the terms of the contract he should have done so at the trial.

The plaintiff claimed a commission on the sale of thirty cars to Riverview Park. For some time previous to this sale the defendant and Miller and Baker had been in communication with the manager of the park trying to sell him a Dodgem ride. The auditor found that a contract had been

prepared, but had not been signed; that at a convention held in Chicago, Miller and Baker, Pratt and the plaintiff attended; that Pratt asked the plaintiff to use what influence she had to get the contract signed as it would help the Pratt company in selling Dodgems; thereupon she saw Hodge, the assistant manager of the park, and urged him to get the contract signed; that he said he would see Schmidt, the general manager, about it; that the plaintiff then saw Schmidt and urged him to give her the contract; that he told her that if she would call at Riverview Park the next morning he would give her a signed contract; that she communicated this to Pratt; that she and Pratt went to the park office on the next day and there in Pratt's presence she urged Schmidt to sign the contract and give it to her; that he did so, stating he would send a deposit check to Pratt, which he did; that thereupon the plaintiff handed the signed contract to Pratt; that it was for a fifteen car ride at $700 a car, and later it was increased to thirty cars. We are of opinion that upon these findings and the other evidence the jury were warranted in finding that the plaintiff had earned a commission on this sale.

The plaintiff claims a commission on a sale to one Hinkleday. It appeared that previous to this sale a twenty car ride had been sold by the plaintiff to one Aeschbach, who cancelled his contract and forfeited a deposit of $500; and afterwards a contract of sale was made with Hinkleday for a twenty car ride to be used in the same location in place of the Aeschbach contract. The auditor found that the plaintiff was entitled to a commission on the sale to Aeschbach, but was not entitled to a further commission on the sale to Hinkleday. The defendant contends that the evidence was not sufficient to warrant a finding that the plaintiff was entitled to a commission on this sale, but we are of opinion that it was for the jury to determine that question upon all the evidence including the auditor's report. The defendant also contends that, as Aeschbach cancelled his contract with the defendant, the plaintiff cannot recover a commission for the sale to him, or that in any event her recovery is limited to $1,000, and that she is not entitled to $350

additional.   The auditor found that $1,350 was due the plaintiff.   Under the contract she was entitled to receive a commission of $1,000 on each fifteen car ride sold by her for $10,500.   The evidence justified a finding that she had earned a commission of $1,000.   But to entitle her to a further commission of ten per cent she must prove that the defendant received on the contract a sum in excess of $10,500; it appears that but $500 was paid on this contract and that it was afterwards cancelled.   It follows that the defendant's request for ruling that the plaintiff could not recover a sum in excess of $1,000 for a commission on the sale to Aeschbach, should have been given.

The plaintiff seeks to recover a commission on a sale of twenty cars to Dominion Park in Montreal, Canada.   The auditor found that the commission for this sale, $587.50, had been charged by her to Miller and Baker in a statement which she had rendered to the defendant in settlement with the latter and that the defendant had paid her one half of that commission (charging it to Miller and Baker).   The balance of $293.75 the plaintiff also seeks to recover from the defendant.   The amount so claimed was a debt due to her from Miller and Baker.   The defendant is not liable therefor and the auditor so found.   The plaintiff contends that the defendant promised to pay it, but there is no evidence to show that any promise was made by any one representing the defendant sufficient to satisfy the statute of frauds.   The record recites " There was no memorandum or agreement in writing introduced by the plaintiff showing a promise on the part of the defendant to pay to her this indebtedness of Miller and Baker."   The defendant's requests 38, 39 and 40 should have been given.

The plaintiff seeks to recover a commission for securing locations at Luna Park, Coney Island, and at Canarsie Shore, the amount so claimed being $500 for each location, and in addition she seeks to recover commissions of $1,350 for a ride sold at each of these places.   The auditor found that she was entitled to recover $500 for securing the location at Luna Park, but was not entitled to recover on the claim for selling a ride there or for securing the location or installing

the ride at Canarsie Shore.  At the trial in the Superior Court the defendant requested the court to rule in substance that the plaintiff could not recover for rides installed at either of these places; and that if the defendant was liable for securing a location at Luna Park the plaintiff could not recover more than $500.  These requests were refused and the defendant excepted.  As all the evidence is not reported, we are unable to say as matter of law that the refusals of the court to give the defendant's requests numbered 32, 33 and 35 were error.  If, as the jury may have found, the plaintiff introduced evidence which controlled the finding of the auditor upon these items, she was entitled to recover a commission not only for securing a location at Luna Park but also for similar services at Canarsie Shore and for rides sold at each of these places.

The auditor found that the plaintiff was entitled to a commission of $1,000 on a sale of a fifteen car ride to one Neble. At the trial the defendant, by requests 22, 43, 44 and 45, requested instructions to the effect that the plaintiff could not recover a commission for this sale, on the ground that it would be a fraud upon Miller and Baker and for the reason that she, having previously allotted sales to that firm, was estopped from claiming a commission under her contract with the defendant.  It could have been found that she was entitled to operate under both contracts and that by so doing she violated no legal obligation to Miller and Baker.  The defendant's requests relating to this sale are overruled.

The plaintiff's exceptions in the first case arise by reason of an alleged sale of one hundred and thirty-five cars to one Tonner.  The plaintiff contends that she was instrumental in making such a sale under the contract with the defendant hereinbefore referred to, and is thereby entitled to recover $9,400.  The auditor found that the plaintiff was entitled to recover $1,000.  The trial judge instructed the jury upon this item as follows: " If the jury shall find that the defendant is liable to the plaintiff for the sale of a ride to one Tonner, then they must find that the defendant is only liable to her for a sale of twenty cars."  To this instruction the plaintiff excepted.

Upon this item the auditor found the following facts: The plaintiff first met Tonner early in February, 1921, in the defendant's New York office, where he had been brought by one Neble to see a sample car on exhibition there. Later in the same month there was a convention of amusement park men held in Chicago. Pratt attended the convention and the plaintiff, at his invitation, accompanied him to help sell Dodgems, the Pratt company paying her travelling expenses, but not her hotel bills. They met Tonner in Chicago in company with Neble. Pratt urged the plaintiff to go to Riverview Park in Neble's absence, and she and Pratt took Tonner to Riverview Park and showed him the ride. On their return to the hotel, Pratt and the plaintiff took Tonner to her room and discussed a sale of Dodgems to him; for the exclusive right to sell cars in England, he agreed to buy seventy-five cars, and Pratt drew a contract for the sale of that number of cars at $700 each. The contract was signed by Pratt in behalf of the defendant, and by Tonner, in the presence of the plaintiff; and Tonner gave Pratt a check payable to the defendant for $2,000 as a deposit on account of the purchase. Later, in response to a request for funds by the plaintiff, Pratt indorsed the check over to her; she deposited it for collection, but it proved worthless and was returned to her unpaid, and she notified Pratt to that effect. On returning to Lawrence, Pratt wrote the plaintiff a letter dated February 22, 1921, in which he referred to this and another sale of cars and stated: " I called on you for help in both cases, so of course acknowledge my indebtedness and am pleased to pay you." On February 24, 1921, Tonner went to Lawrence and discussed further with Pratt the purchase of cars. In a letter of that date Pratt gave the plaintiff the details of this conference, stating: " He (i.e. Tonner) has signed for one ride (i.e. 20 cars) and also 55 cars more to be shipped later. I received a cash deposit of $750, all the money he had with him, and am shipping a car to him to-morrow, on receipt of which he is to remit $6,250. When I receive this amount from him in 15 days I will credit you with commission on same."

The auditor further finds that on February 25, 1921, a

new contract was executed by Tonner and by Pratt, on be-
half of the defendant, for the sale to Tonner and the pur-
chase by him of a twenty car ride for $14,000, of which $750
was to be paid on execution of the contract, $6,250 within
fifteen days thereafter, and $7,000 on receipt of bill of lading;
that in this contract Tonner agreed to buy not less than fifty-
five cars in addition at $700 each and to pay $5,000 on each
order in advance; that the balance due on each shipment
was to be paid on receipt of the bill of lading; that Tonner
further agreed in this contract to purchase during the season
of 1922 at the above prices and terms, not less than sixty
additional cars, delivery to be made not later than December
31, 1922. This contract covered altogether one hundred
and thirty-five cars at $700 each, a total of $94,500. On
February 28, 1921, Pratt informed the plaintiff by letter
that Tonner had bought seventy-five cars for England. On
March 17, 1921, Pratt wrote the plaintiff that Tonner " had
made good " and that the Pratt company was preparing to
make shipment to him. The auditor further found that
under the above contract the defendant delivered to Tonner
only twenty cars, and received from him on account thereof
only $7,000; that in her statement to Pratt, prepared on her
return from the Chicago convention, the plaintiff gave
Miller and Baker credit for the sale of the twenty cars to
Tonner; and under her contract with them, claimed a com-
mission of $587.50 together with $87.50 from the defendant.
The auditor further found that in view of Pratt's letters to
the plaintiff of February 22 and 24, 1921, above referred to,
the defendant owes her $1,000 as commission on these twenty
cars.

The contract between the parties is definite in its provisions
and is free from ambiguity. By its terms the defendant
agrees to pay the plaintiff $1,000 as commission for each
fifteen car ride sold by her for $15,000 (the last amount being
afterwards changed to $10,500), provided she should make
an appointment for the prospective purchaser with the
Pratt company for the consummation of a contract of sale
between them; or the plaintiff should notify the defendant
by mail or telegram of the intention of a prospective pur-

chaser selected by her to consummate such sale. The contract further provides that the defendant should pay the plaintiff a sum equal to ten per cent on all moneys received on any contract of sale solicited by her over and above $15,000; that the defendant shall pay the plaintiff a sum equal to ten per cent on any cars which the defendant sold to any purchaser solicited by her in addition to the original ride sold to such purchaser, at any time within one year from the date of the original sale to such purchaser; that the defendant shall pay the plaintiff any moneys due her, one half thereof upon the signing of any contract of sale with any purchaser; and that the defendant shall give her a note for the balance payable forty-five days after such signing.

We construe this contract to mean that, if a written contract for the purchase of a ride, binding upon the seller and purchaser, was made, the plaintiff became entitled to a commission, provided she made an appointment for the consummation of the contract between the prospective purchaser and the defendant or notified the defendant by mail or telegram of the intention of a prospective purchaser solicited by her for the purpose of consummating a contract of sale; but that she was not entitled under any provision of the contract in the event of a sale of a greater number than fifteen cars, to an additional commission unless and until the defendant had been paid by the purchaser for such cars so sold in excess of fifteen. It follows that as Tonner paid the defendant only $7,000 a sum less than the price of fifteen cars, that the plaintiff cannot recover a sum greater than $1,000. The exception of the plaintiff to the instruction that " If the jury shall find that the defendant is liable to the plaintiff for the sale of a ride to one Tonner, then they must find that the defendant is only liable to her for a sale of twenty cars," must be overruled. The plaintiff's second request " That if the true import and meaning of an instrument in writing cannot be determined from its language, it must be construed most strongly against the party using the uncertain language," must be overruled. As the contract is free from ambiguity, the request is not applicable.

SECOND CASE.

This was an action upon the contract referred to in the first case to recover commissions upon certain sales alleged to have been made by the plaintiff and set forth in Exhibit B of her declaration. The auditor found that she was not entitled to recover for any of these sales, on the ground that, upon the facts found by him, the sales were not made through her efforts or were not made by her within one year after the date of original sales made by her, in accordance with the terms of the contract. The trial in the Superior Court was upon the auditor's report, upon her oral testimony, and upon certain correspondence offered by her. At the conclusion of the evidence, the presiding judge instructed the jury to return a verdict for the defendant on the ground that there was no evidence to control the auditor's finding. To the verdict so ordered the plaintiff excepted.

After a careful examination of the findings of the auditor and the other evidence introduced at the trial, we are of opinion that the oral evidence and correspondence offered at the trial did not in any way control or affect the auditor's findings. The auditor's report, finding for the defendant, is *prima facie* evidence and requires a verdict for the defendant unless there is other evidence either in the report or outside of it to control the findings. *Anderson* v. *Metropolitan Stock Exchange*, 191 Mass. 117, 121. *Wakefield* v. *American Surety Co. of New York*, 209 Mass. 173, 176, and cases cited. As only one conclusion could properly be drawn as matter of law a verdict was rightly directed for the defendant.

It follows that, in the first case, the right of the plaintiff to recover a commission on the sale of a ride to Aeschbach is limited to $1,000, and she is not entitled as matter of law for the reasons previously stated to recover $350 in addition thereto; nor is she entitled to recover from this defendant $293.75 as commission on the sale of a ride to Dominion Park. These amounts may have been included in the verdict. If the plaintiff within thirty days from the date of the rescript files a remittitur of $643.75 and interest thereon from the date of the writ to October 19, 1923, the date of

the verdict, the defendant's exceptions are to be overruled; otherwise they are to be sustained.   In each case the plaintiff's exceptions are overruled.

*So ordered.*