CAVANAUGH BROS. HORSE COMPANY vs. WILLIAM A. GASTON
& another, executors.

Suffolk.    March 10, 1926. — May 25, 1926.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Contract*, What constitutes, Implied, Under seal.  *Practice, Civil*, Parties,
Auditor.  *Limitations, Statute of.*  *Trust.*  *Evidence*, Presumptions and
burden of proof.

An action of contract upon an account stated cannot be maintained against
the executor of a will to pay a balance which, it was alleged, the de-
fendant's testator and the plaintiff had agreed was due to the plaintiff
upon an account between the plaintiff and a third person and which the
defendant's testator then promised to pay.

A creditor cannot maintain an action of contract for an alleged breach of a
declaration of trust under seal to a trustee to whom the debtor had
conveyed his property for the benefit of his creditors, if it does not ap-
pear that the plaintiff or any other creditor had become a party to the
declaration or to the trust agreement.

A right at law or in equity to proceed against a trustee for breach of an
express trust is barred after six years from the time when the injured
beneficiary learns of the breach.

The maintenance of an action of contract depended upon whether a
promise in writing to pay a debt was signed.  An auditor who heard
the action found that the promise was signed.  At a trial before a jury,
there was in evidence, beside the auditor's report, oral testimony that
the alleged writing, which was at no time in evidence, had been lost,
and as to statements by the alleged signer, who had died, and conduct
of the plaintiff, which were inconsistent with an inference that the
paper was signed.  The jury found specially that it was not signed.
*Held*, that it was proper for the judge to refuse to order a verdict in
accordance with the auditor's report, and that the special finding by
the jury was warranted.

CONTRACT against the executors of the will of Henry P.
Nawn, for a balance alleged to have been agreed between
the plaintiff and the defendants' testator to be due to the
plaintiff on an account stated on November 1, 1918, to be
due from John J. Nawn amounting to $3,913.08.  Writ
dated March 29, 1923.

In the Superior Court, the action was referred to an auditor.
Thereafter there was a trial in the Superior Court before

*Hall,* C.J.   Material findings by the auditor, evidence at the trial, findings by the jury, rulings by the Chief Justice, and exceptions saved by the plaintiff are described in the opinion.   By order of the Chief Justice, a verdict was returned for the defendants.   The plaintiff alleged exceptions.

*F. J. Smith,* for the plaintiff.

*E. C. Thayer,* (*E. Bangs* with him,) for the defendants.

WAIT, J.   The plaintiff declared, in contract, that it and Henry P. Nawn accounted together on November 1, 1918; that a balance of $3,913.08 was found due from Nawn which he agreed to pay but never paid.   The defendants, in addition to general denial and payment, pleaded the statute of frauds and the statute of limitations.   The case was referred to an auditor who reported findings of fact upon which, unless the statutes of frauds and of limitations constituted a defence, the defendants, as executors of Henry P. Nawn, would be liable.   At the trial before a jury, the plaintiff put in the report of the auditor and rested.   All other evidence was introduced by the defendants.   The judge refused to instruct the jury in accord with requests by the plaintiff, refused to order a verdict in accord with the auditor's report for the plaintiff, and submitted to the jury two issues of fact upon a charge confined to those issues.   The jury found upon the first of these issues that Henry P. Nawn did not sign the originals of certain exhibits.   This made a finding upon the second issue unnecessary.   Thereupon the judge ordered and the jury returned a verdict for the defendants.   The plaintiff saved exceptions to these refusals and order.

There was evidence that in 1900 one John J. Nawn, a cousin of the deceased Henry P. Nawn, was indebted to a partnership, Cavanaugh Brothers, in the amount claimed in the declaration.   He also was in debt to Henry P. Nawn, and owed the National Shawmut Bank $5,100 on a note indorsed by Henry Nawn and by Cavanaugh Brothers.   Under date of February 17, 1900, he deeded certain pieces of real estate to Henry P. Nawn who, as a condition of the delivery of the deeds to himself, executed a declaration of trust under seal which declared that the conveyances were made to him "to sell and turn into cash, and pay up all debts of John J.

Nawn to whomsoever owed, including especially a loan of
$5,100. to the National Shawmut Bank, upon which Cava-
naugh Brothers and I are liable, and debts due me and said
Cavanaugh Brothers," and concluded as follows: "I hereby
promise, covenant and agree to and with the said John J.
Nawn that I will turn over to the said John J. Nawn, or his
wife, any net proceeds from the property over and above
what I may use to pay said debts, or any other debts owed
by said John J. Nawn or wife, after deducting reasonable
costs and expenses."   This instrument was kept by one of
the Cavanaugh Brothers.   Under date of December 22,
1903, Henry Nawn reconveyed the premises (except one
parcel lost by a foreclosure of a mortgage to which it was
subject when received by Henry Nawn) to John J. Nawn,
and. received two mortgages, one for $4,500, and one for
$5,993.25, on the separate parcels, both of which bore interest
at six per cent and were for the term of one year.   The deeds
of conveyance to Henry P. Nawn were recorded February 25,
1901; while the reconveyance and mortgages were recorded
January 15, 1904.   Cavanaugh Brothers did not know of
the reconveyance and mortgages till 1915.   In 1916 Cava-
naugh Brothers organized the plaintiff corporation, and
assigned to it the firm's outstanding accounts on January 28,
1916.   Sometime before September, 1918, the declaration
of trust, which had been lost for years and whose existence
at any time had been denied by Henry Nawn, was found;
and on September 24, 1918, it was taken to him with a state-
ment from the books of Cavanaugh Brothers of the account
against John J. Nawn and shown to him.   He is said then to
have acknowledged the signature and promised to pay the
account.   On November 1, 1918, one of the Cavanaugh
brothers, then an officer of the plaintiff corporation, went to
Henry P. Nawn at his home, taking with him the declaration
of trust and a transcript of the accounts against John J.
Nawn (the original of Exhibits 1, 2 and 3 at the trial) which
showed at the bottom a balance due of $3,913.08.   The
auditor found that on this occasion there was written at
the foot of the account under the balance: "I will pay this
account.   H. P. Nawn  Witness M. A. Cavanaugh"; all

but the signature being in the handwriting of Cavanaugh. The jury, in answer to a special question, found that Henry P. Nawn did not sign this promise.

December 16, 1919, Henry P. Nawn assigned the mortgage for $5,993.25 to William A. Gaston, then an officer of the National Shawmut Bank, who discharged it on August 2, 1921. On September 26, 1921, Henry P. Nawn discharged the mortgage for $4,500. Both discharges were recorded November 10, 1921. Henry P. Nawn died in March, 1922. This action was begun March 29, 1923.

The exceptions must be overruled.

The action is at law on an account stated. Such an action lies only where there have been transactions previous to the statement of the account which create a relation of debtor and creditor. *Chase* v. *Chase*, 191 Mass. 556. *Tucker* v. *Columbian National Life Ins. Co.* 232 Mass. 224, 229. It is inapplicable to enforce a promise to pay the debt of another. *French* v. *French*, 2 Man. & Gr. 644. The promise here is to pay the debt of John J. Nawn.

The plaintiff contends, however, that it has acquired a right to sue by virtue of the declaration of trust signed by Henry Nawn in 1900. That declaration is under seal. The only promise which it contains is a promise to John J. Nawn. He is the only person who can sue upon it. A third person cannot maintain an action on a sealed instrument to which he is not a party. *Millard* v. *Baldwin*, 3 Gray, 484. *Boyden* v. *Hill*, 198 Mass. 477, 487. *Forbes* v. *Thorpe*, 209 Mass. 570, 581.

If the reconveyance made in 1903 was a breach of trust, any right at law or in equity to proceed against Henry P. Nawn has been taken away by the statute of limitations. The act was an open disavowal of the trust alleged, *O'Brien* v. *McSherry*, 222 Mass. 147, which probably would set the statute in operation, *Merriam* v. *Hassam*, 14 Allen, 516, so that the bar would be complete in 1910. But if — because the Cavanaugh Brothers were ignorant in regard to it, *O'Brien* v. *O'Brien*, 238 Mass. 403, 411 — the statute did not begin to run until 1915, when they learned actually of the reconveyance, the bar was complete in 1921. *Young* v. *Walker*, 224 Mass. 491.

There was evidence to justify the finding by the jury. The plaintiff contends that the finding by the auditor must control in the absence of affirmative evidence to impeach it. *Greenburg* v. *Stoehrer & Pratt Dodgem Corp.* 250 Mass. 410, 433. There is such affirmative evidence in reasonable inference to be drawn from the statements of Henry P. Nawn in his lifetime, put in evidence by the defendants, denying any promise, taken with the conduct of the parties as disclosed in the evidence hereinbefore stated. *Wyman* v. *Whicher*, 179 Mass. 276. The questions, what was to be believed, and what inferences were proper, were for the jury.

The fourth request for instructions was waived. No claim of fraud on the part of Henry P. Nàwn is made. What has been said disposes of the exceptions taken to the refusal to instruct as requested.

The judge could not have directed a verdict for the plaintiff rightly. Upon the finding of fact made by the jury, after instructions to which no exception was saved, he was right in directing a verdict for the defendants.

*Exceptions overruled.*