[Civ. No. 7041. First Appellate District, Division One.—July 25, 1930.]

H. HEMENOVER, Respondent, v. B. F. LYNIP, Appellant.

Clark, Nichols & Eltse for Appellant.

Daniel A. Ryan and F. H. Dam for Respondent.

PARKER, J., *pro tem.*—This is an action upon an account stated. Trial was had by the court sitting with a jury and pursuant to the directions of the trial judge the jury returned its verdict in favor of the plaintiff and judgment being entered thereon the defendant prosecutes this appeal.

The plaintiff is the assignee of one F. H. Dam, an attorney at law of the California bar. The complaint alleges that on November 1, 1926, an account was stated between F. H. Dam and the defendant and upon such statement there was a balance due said Dam in the sum of $6,690. That on the said date defendant agreed to pay the said amount and has failed to do so. This, with an allegation of the assignment, duly proved and not material here, constitutes the allegations of the complaint. Defendant by answer denies that on the date alleged in the complaint or at any other time or date an account was stated be-

tween defendant and Dam or that upon such statement any amount was found due or owing to Dam. Denies that on the date named or at any other time defendant agreed to pay Dam the amount alleged or any other sum. Denies that anything is due or ever was due or owing or unpaid to plaintiff or to Dam. Upon these pleadings the parties went to trial before the court and a jury.

At the trial Dam testified that he was an attorney residing at Berkeley and knew the defendant. That he assigned the account. That on November 1, 1926, he mailed to the defendant a letter and statement of account bearing same date. The letter simply asked that the inclosed account receive prompt attention. The account read as follows:

"Mr. B. F. Lynip,
    (With address)
"To F. H. Dam, Dr.

"To services rendered, commencing October, 1923, in promoting, advising with relation to, and bringing about a sale of 669 shares of the capital stock of the College National Bank of Berkeley to the American Bank, $6,690."

The witness further testified that he received no reply to this statement. Witness then introduced further bills rendered currently for the same amount referred to as account rendered. All of these statements were received by defendant. On March 4, 1927, after sending the statement as an account stated the said Dam wrote a letter to defendant wherein he referred to the claim and in that letter quoted to defendant a number of decisions of the courts of this state to the effect that by defendant's silence the account had become an account stated. On March 7th defendant replied to this letter denying any obligation, the the letter reading: "This is a notice of denial of owing you anything." The other parts of the letter are not material here. It was then shown, though with what materiality we cannot see, that thereafter and up to time of suit Dam sent further bills and demands to defendant, all of which were unanswered. This comprises the entire case of plaintiff. Plaintiff rested there. Defendant called F. H. Dam as a witness under the provisions of section 2055 of the Code of Civil Procedure.

Dam then testified that his first conversation with the defendant respecting a sale of his stock in the College National Bank occurred in October, 1923. He was then asked to relate the conversation, what defendant said to him and what he said to defendant. Objection being made to the question on the ground that it was irrelevant, incompetent and immaterial and not within the issues, the court inquired of counsel for defendant as to what he expected to prove by such testimony. Whereupon counsel for defendant replied: ''We expect to show by questions put to the witness that there was no antecedent liability of the defendant to the witness to which an account stated could attach, or which could be the basis of an account stated; that he proposed to show from the testimony of the witness that there was no rendition of services under any contract under which either party understood or agreed expressly or impliedly that Dam was to be paid any amount whatever for the services set out in the demand; that Dam did not perform services for Lynip in promoting or advising with relation thereto or in bringing about the sale of the stock named; that even if any services were rendered the demand thereafter was grossly exaggerated and unreasonable, and such facts would have to be taken into consideration in determining the reasonableness of Lynip's conduct in not replying.'' The defendant offered to show the foregoing matters by questions put to the witness. Plaintiff renewed his objection to the offer on the grounds that the testimony offered was not appropriate to the issues framed by the pleadings and that if defendant had any such defense as stated he should have amended his answer to set the said defense forth. The court sustained the objection.

Defendant's counsel then stated that he proposed to put the defendant upon the stand and the trial judge called upon counsel to state the purposes of the proposed testimony of the witness without putting to the witness the specific questions. Counsel for the defendant thereupon stated that he proposed to show by questions propounded to the witness that there was no antecedent liability of the defendant to F. H. Dam to which any account stated could attach or which could furnish the basis for any account stated, and further, that the witness did not know, understand or believe that there was any necessity for his reply-

ing to any statement of account rendered him, or that his omission so to do would amount to his agreeing to the demand, or create liability against him, and that any delay in answering any statement or demand was not intended by the witness as an agreement to any balance or that there was any sum due from him to Dam. Thereupon the court ruled that the witness could not be examined for any of the purposes stated and refused to permit questions to be put to the witness. Thereafter the defendant was placed upon the witness-stand and his counsel repeated his offer, after the witness was duly sworn. Objection was renewed and sustained. Thereupon the defendant rested and the court instructed the jury to bring in its verdict for the plaintiff in the amount sued for and represented in the statement. A motion for a new trial was made and denied.

We have thus stated rather fully the entire record, to the end that every phase of the controversy may be considered.

An account stated is exactly what the words imply. It is the statement of an account and it is clear that the term "account" in itself implies some previous transaction or transactions. Accounts stated are purely of commercial origin and at the outset the doctrine was confined to tradesmen or those engaged in commercial pursuits. For many reasons the rule was extended, until now all classes of trades or professions have the benefit of the doctrine and the presumptions arising therefrom. From the earliest writers and through the decisions of the courts uniformly the basic idea of a stated account was an agreement of the parties, either express or implied, ending controversy and closing debate upon prior negotiations or prior obligations. An account stated has been held to be and is a new contract having for its exclusive foundation the prior relations between the parties.

In 62 American Decisions, beginning at page 85, there is an extensive note on the subject of accounts stated. Inasmuch as this note is cited as authority in all of the more recent text-books and law compilations and is exhaustive as of the time prepared it stands as authority worthy of citation. Therein, an account stated is defined as being an agreement between persons who have had previous transactions, etc. "What is an account stated? says Earl, C., in

*Stenton* v. *Jerome,* 54 N. Y. 480; it takes two parties to make one, the debtor and the creditor." The same note, supported by authority, says: "It is necessary to observe also that the count on an account stated implies some previous transaction between the parties with reference to which the account relied on was stated between them."

In the case of *Van Bebber* v. *Plunkett,* an Oregon case, reported in 26 Or. 562 [27 L. R. A. 811, 38 Pac. 707], we find the subject again discussed. In that case it is held that the admissions, going to constitute a stated account, must have reference to past transactions; that is to a subsisting debt or a moral obligation. Quoting an earlier case, the opinion reads: "It will be noted that the account stated relates to some previous transactions or dealings between the parties and that the relation of debtor and creditor already exists between them."

In *Whitwell* v. *Willard,* 1 Met. (Mass.) 216, Shaw, C. J., says: "The primary idea of account, computation, whether we look to proceedings of courts of law or equity, is some matter of debt and credit or demands in the nature of debt and credit between the parties." Ruling Case Law, volume 1, page 208, states the doctrine as follows: "An account stated implies some previous transaction or indebtedness." The rule is supported in *O'Hanlon* v. *Jess,* 58 Mont. 415 [14 A. L. R. 237, 193 Pac. 65], a Montana case, and in *Cavanaugh Brothers Co.* v. *Gaston,* a Massachusetts case, found in 255 Mass. 587 [152 N. E. 623], and also in 47 A. L. R., at page 1. In the latter case it is said: "The action is at law upon an account stated. Such an action lies only where there have been transactions previous to the statement of the account which create a relation of debtor and creditor."

In the case of *Gallwey* v. *Castelhun,* 35 Cal. App., at page 592 [170 Pac. 657, 658], the court, speaking through Justice Lennon, concurred with by Justices Richards and Kerrigan, uses this language: "There was no account stated between the parties. One of the essentials of an account stated is a previous indebtedness."

In the case of *Coffee* v. *Williams,* 103 Cal., at page 558 [37 Pac. 504, 506], we find this language: "Now, as to the question whether or not there had been an account stated as alleged in the complaint, there was the testimony of

plaintiff and Hirshfield on the one side and the testimony of the defendant upon the other. Under this condition of the testimony defendant sought to introduce evidence of circumstances which he claimed would tend to show that it was—if not impossible—at least highly improbable, that he ever agreed to such an alleged account stated as that averred in the complaint. This evidence was ruled out by the court upon the theory that when there is an account stated parties cannot go back and attack the original items unless upon proper averment of fraud, mistake, etc. This is no doubt the rule when the account stated is admitted, but in the case at bar the main issue was whether *there was* such an account. While that issue was before the court, of course, no evidence about the original items was admissible for the purpose of surcharging the account; but in determining the existence of the account the court was not confined to considering the mere naked 'yes' or 'no' of the witnesses. The defendant had the right to show, if he could, the inherent improbability of his agreement to such an account; and to the end evidence was admissible of at least the general nature of the circumstances of the business between the parties and the character of the objections made by defendant to the items of the alleged account stated.''

In *Swim* v. *Juhl*, 72 Cal. App. 365 [237 Pac. 552, 553], the question is again reviewed and the court holds squarely as follows: ''Other cases are cited to the point that an account stated becomes a new contract upon which suit may be based without proof of the original contract. But none of these cases hold that the mere failure to object to a bill rendered can ripen into an account stated where no legal indebtedness existed at the time.'' The court quotes with approval 1 Ruling Case Law, page 215. And the court concludes the case by stating that an account stated cannot create liability where none had heretofore existed.

█ Without further citation of authority, we are satisfied that the learned trial judge committed serious and prejudicial error in the rulings complained of and in the direction of the verdict without permitting defendant to introduce the evidence offered.

Throughout all of the authorities, ancient and modern there runs the prevalent idea of a previous or antecedent

liability, without which an account stated cannot be established. Reason and justice compel this conclusion. It was and is the theory of the doctrine of account stated that litigation be avoided and controversies settled and the law looks with much favor upon any plan which aids in bringing about these results.

The advantages of the doctrine accrue to both debtor and creditor, protecting the latter in his claim and assuring the former that he will not be called upon to meet demands concerning which his evidence might not be available. But it was never intended that through the mere means of sending out a claim that thereby a legal and recoverable demand might be created unless the adverse party made prompt and effectual denial. The law was intended to preserve and protect legitimate demands but not to create obligations independent of prior indebtedness.

As in the case of *Coffee* v. *Williams, supra,* the issue here was plain and well defined. The sole issue was whether or not there had been any account stated between the parties. We hold that on this general issue proof that there was never any antecedent liability or contractual relationship between the parties was relevant and material to the issue and should have been admitted.

We are of the opinion, likewise, that the offered testimony was relevant as explanatory of defendant's conduct in not replying to the demand. It may be conceded that when the facts are clear the question of the effect of acquiescence and the length of time deemed reasonable may be determined by the court as a matter of law. But where a conflict appears, all of the facts should be submitted to the jury under appropriate instructions. As an abstract proposition a delay of four months, if unsatisfactorily explained, might, as a matter of law, be properly held to amount to acquiescence. A delay in replying to a demand might, however, be satisfactorily explained and circumstances shown that would negative any idea or implication of assent. However, as a concrete proposition, the satisfactory explanation is a question of fact.

In *Crane* v. *Stansbury,* 173 Cal. 631 [161 Pac. 7, 9], the court says: "What the court told the jury in effect was that this delay of six months, if unsatisfactorily explained, was, as a matter of law, unreasonable, and that because of

it acquiescence would be presumed, and the account would become an account stated. Such is the law." And in the same case the court held that defendant's explanation of the delay was a matter for the jury.

■ It cannot be claimed that any of the attributes of a true account stated attach to a claim the minute it is mailed, where reliance is upon acquiescence alone. The law has never set any arbitrary time within which an irrefutable implication arises, save perhaps in the olden times when the law was solely of the law merchant. The length of time necessary to work out the change from a mere demand to an account stated necessarily varies with all of the circumstances. Therefore, when, under the general issue a defendant denies that he ever entered into a statement of account with plaintiff, where the plaintiff's case rests upon the implication of acquiescence, the defendant puts in issue the implied fact. This implication is of the class and character of the so-called presumptions or inferences, coming within the class known as disputable. While our courts have had much difficulty in determining the effect of these presumptions it has never been held that those of this character go further than to establish a *prima facie* case.

The judgment and order denying a new trial are reversed and a new trial ordered.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 22, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 23, 1930.