[Civ. No. 13115.   First Dist., Div. One.   Jan. 8, 1947.]

CROWN PRODUCTS COMPANY (a Limited Copartnership), Respondent, v. CALIFORNIA FOOD PRODUCTS CORP. (a Corporation) et al., Appellants.

Lorne M. Stanley, Marcus L. Samuels and Richard tum Suden for Appellants.

Heim Goldman and Raymond H. Shone for Respondent.

PETERS, P. J.—Plaintiff brought this action to recover damages from defendant for breach of contract. The trial court found that defendant had breached the contract, fixed plaintiff's damages at $8,610.35, and entered its judgment accordingly. Defendant appeals.

The facts are as follows: Under date of January 20, 1941, Joseph Smooke, general manager of plaintiff, and Neal Harris, secretary of defendant, on behalf of their respective companies, entered into a properly executed written contract whereby the defendant agreed to sell and the plaintiff agreed to buy "during each of the years 1941, 1942 and 1943, a total of not less than 300,000 gallons and not more than 400,000 gallons 59½ grain cider vinegar." The contract also provided that "for the purpose of this contract, the year shall start October 1 and end September 30"; that "the price of this vinegar shall be five cents per gallon less two percent F.O.B. Sebastopol payment in five days from shipment"; that the vinegar should be of a certain type and should be shipped in a designated fashion; that the "seller has made contracts for the purchase of apple juice and has storage capacity in Sebastopol to carry said apple juice. But in the case of crop failure, fire, earthquake or an act of God making it impossible to fulfill the terms of this contract, then both buyer and seller shall be relieved from further fulfillment until such catastrophe may be remedied."

In 1941 the parties orally agreed that the price of the vinegar covered by the above contract should be changed to six cents per gallon, and in 1942 the parties orally agreed that such price should be seven and one-half cents per gallon. At no time during the contract period did defendant deliver the quantity of vinegar it had contracted to deliver. For the year ending September 30, 1942, the defendant delivered 209,403 gallons; for the year ending September 30, 1943, there was delivered 73,879 gallons; and that for the year ending September 30, 1944, but 5,586 gallons were delivered.

In August, 1943, Smooke and Harris discussed the question of shortages in the deliveries, and other matters relating to the contract. At that time Smooke told Harris that his company did not desire litigation, that it did not feel that defendant had dealt fairly with them, but that if defendant would agree to deliver the full 350,000 gallons called for by the contract for the 1943-1944 period the plaintiff would agree to waive the past defaults. As a result of this conversation the defendant sent to plaintiff a letter dated August 30, 1943, which provides: ''Confirming conversation between you and writer, of a week ago, we are to deliver to you between present time and October 1, 1944, 350,000 gallons of 60-grain cider vinegar at the same price as we have been billing which is 7½ cents a gallon. This delivery will be in full for existing contract in force at present between the Crown Products Corp. and the California Food Prod. Corp.'' Under date of September 3, 1943, the plaintiff wrote to defendant to ''acknowledge acceptance of the terms and conditions regarding vinegar as set forth in your letter . . . of August 30, 1943. . . .'' After this modification, the defendant delivered 5,586 gallons of vinegar, but failed to deliver the balance.

In September, 1943, Harris called upon Smooke and told him that his company refused to make any further deliveries unless plaintiff agreed to an increase in the price. According to Smooke, Harris then told him that ''if you want to have any more vinegar you have to pay me ten cents a gallon for that vinegar or otherwise we will stop making deliveries.'' The plaintiff thereupon consulted its attorney, and the attorney wrote to defendant under date of September 29, 1943. A day or so later Harris called upon the attorney. The attorney testified that Harris then told him ''that unless he got more money he would not make any deliveries.'' When Harris' attention was called to the contract price Harris replied: ''Well, I can't make any deliveries at that price, and I won't make any unless I get an increase in price. . . . I want 7½ cents for the first 50,000 gallons, 8½ cents for the next 50,000, 9½ cents for the third 50,000, and 10 cents a gallon for all over that.'' This suggested increase was to be under the 1943 contract. When Harris' attention was called to the fact that his company had a covering contract to secure apple juice from the California Conserving Company, he replied: ''I won't do that unless I get that increase in price. I will not make any deliveries of that kind.'' The attorney

then agreed to submit the suggested increase to Smooke. Smooke refused to pay the increase, and told the attorney to tell Harris that he insisted on deliveries according to the contract as modified. The attorney, early in October, 1943, conveyed Smooke's message to Harris. Harris, according to the attorney, replied: "Very well, then, we are all through, I won't make any further deliveries."

Harris, as a witness for defendant, denied most of the above statements attributed to him, except that he did admit making a sliding scale proposition to plaintiff's attorney somewhat different from that testified to by the attorney for plaintiff. He denied refusing to deliver, and testified that when Smooke refused to pay the higher price, he, Harris, told the attorney: "O.K., then I will have to deliver." This conflict was for the trial court.

This action was filed on October 14, 1943. On November 12, 1943, which was before service of summons but after defendant had actual knowledge that the action had been filed, defendant tendered a delivery of a little over 2,700 gallons of vinegar at 7½ cents per gallon. The plaintiff rejected the delivery and by letter dated November 15, 1943, informed defendant that the refusal was based upon the fact "that you had previously refused to carry out the terms of your contract with us." The letter also stated that "Your attempted delivery is not in good faith, but merely one to avoid your liability for damages." Smooke testified that this delivery was rejected on the advice of his attorney.

Harris testified that between August 1, 1943, and September 30, 1944, his company could have delivered the full 350,000 gallons.

In January, 1944, the defendant offered 50,000 gallons for delivery. This was offered, however, on the condition that acceptance by plaintiff would clear up all the outstanding contracts. The plaintiff rejected the offer. There is evidence that there was no vinegar available to plaintiff at any price on the open market from August, 1943, to September, 1944, and also evidence that the price of vinegar had gone up to 20 cents a gallon.

In view of defendant's contentions on this appeal some reference must be made to the pleadings. The cause went to trial on the first amended complaint and the answer thereto. The amended complaint sets forth the contract of January

20, 1941, *in haec verba,* and alleges defendant breached the same in September, 1943. No mention is made in the amended complaint to the modification of August 30, 1943. It is alleged that because of defendant's breach of the 1941 contract the plaintiff lost profits of $85,493.90. Defendant's general and special demurrers to this amended complaint were overruled. By its amended answer defendant admitted the execution of the January 20, 1941, contract but alleged that the terms of such contract were changed by a written agreement of August 30, 1943, which substituted this new contract for the old one. The cause went to trial on these pleadings. At the conclusion of the trial, during which both the 1941 and 1943 contracts were introduced into evidence, and all facts relating to both contracts fully inquired into, the trial court directed the plaintiff to amend its complaint to conform to the proof. Plaintiff subsequently filed such an amendment in which the 1941 contract is set forth and then the 1943 contract is pleaded *in haec verba,* and damages under the 1943 contract asked for in the sum of $42,620.43. Defendant vigorously objected to this amendment by demurrer and by motion to strike. The demurrer was overruled and the motion to strike denied.

The court found that the 1941 and 1943 contracts were executed as set forth in the amended complaint and the amendment thereto, and that when the 1943 contract was entered into the defendant was then delinquent in deliveries under the 1941 contract; that the 1943 contract modified the 1941 contract; that it was agreed that "performance under the terms of the August, 1943, contract should be in full for the January 20, 1941, contract"; that defendant delivered 5,586 gallons of vinegar under the 1943 contract; that after the last delivery made in September, 1943, defendant breached the 1943 contract by refusing to make further deliveries thereunder; that there was no other vinegar obtainable on the market; that plaintiff could not have obtained any other vinegar except that it could have obtained the balance of 344,414 gallons by paying defendant ten cents a gallon; that by reason of defendant's failure to perform the 1943 contract plaintiff has been damaged in the sum of $8,610.35. This figure was determined by multiplying the 344,414 undelivered gallons by $2\frac{1}{2}$ cents, the difference between $7\frac{1}{2}$ cents per gallon provided in the 1943 contract and the 10 cents per gallon demanded by defendant.

■ The defendant makes a whole series of related arguments on this appeal all dependent on the premises that the plaintiff sued on the 1941 contract; that that contract was superseded by the 1943 contract; that recovery was had under the 1943 contract; that it was error to permit the amendment to conform to the proof; that plaintiff cannot sue on one contract and recover on another; that the amendment pleaded an entirely different cause of action than that pleaded in the original complaint. These arguments all lack merit. It is quite clear that the 1943 contract was not an entirely new, distinct and different contract from the 1941 contract. Both agreements concerned and related to the same transaction. The 1943 contract, at most, simply modified several of the terms of the 1941 contract. Thus the 1943 contract modified the 1941 contract by extending the time of delivery one day, changed the price for 1943-1944 deliveries from 5 cents to $7\frac{1}{2}$ cents, and changed the type of vinegar from $59\frac{1}{2}$ grain to 60 grain. It could be argued that the second contract was but an accord and that therefore the old obligation remained in force until the new one was performed. (Civ. Code, §§ 1521-1523; see discussion and cases collected 1 Cal.Jur. p. 132, § 8.) Since the new contract was never performed the respondent had the right to sue on the original contract and recover damages for its breach. Even if the 1943 contract constituted a novation it would only extinguish the original obligation if the parties so intended. (Civ. Code, §§ 1530, 1532.) Here the terms of the second contract recognized that the first was still "in force." The parties clearly evidenced their intent that the obligations under the former contract were to be extinguished only by performance of the second one—not by the mere execution of the second one.

The most that can be claimed for defendant's position is that the second contract modified the first, but it cannot be doubted that the second was clearly within the scope of the first. It follows that the amendment to conform to proof did not plead an entirely different cause of action from that originally pleaded. At most there was but one cause of action imperfectly pleaded in the original complaint. (*Gray* v. *Janss Investment Co.*, 186 Cal. 634 [200 P. 401]; *Frost* v. *Witter*, 132 Cal. 421 [64 P. 705, 84 Am.St.Rep. 53].) Under such circumstances it was clearly within the discretion of the trial court to permit the amendment to conform to the proof.

Section 469 of the Code of Civil Procedure provides that: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled the court may order the pleading to be amended, upon such terms as may be just." Section 470 provides: "Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs."

The allowance of amendments to conform to the proof rests in the sound discretion of the trial court. An abuse of discretion is not shown unless prejudice appears and unless new and entirely different issues are thus brought into the case. The greatest liberality is encouraged in this respect. (See collection of cases 21 Cal.Jur. p. 209, § 143.) It must be remembered that the purpose of pleadings is to fairly inform the parties of the nature of the cause of action or the defense. It is not to create traps to ensnare the unwary. Where a case is fully and fairly tried, where all relevant issues are fully developed, and where both sides have a full and fair opportunity to present all relevant evidence on the pertinent issues a cause will not be reversed simply because the pleadings fail to fully disclose all of the related issues. (*Grossetti* v. *Sweasey,* 176 Cal. 793 [169 P. 687].)

In the instant case defendant was in no way prejudiced by the amendment. It knew of the modification—in fact, it pleaded the 1943 contract in its answer. The 1943 contract was introduced into evidence early in the proceedings, and defendant was given a full and fair opportunity to refute all issues raised thereby. Defendant cross-examined plaintiff's witnesses at length on the 1943 contract. Defendant was in no way misled or prejudiced by the amendment. (See *Peters* v. *Binnard,* 219 Cal. 141 [25 P.2d 834]; *Karlik* v. *Peters,* 106 Cal.App. 126 [288 P. 863].)

The defendant contends that there is no evidence to support the finding that it breached the 1943 contract. It urges that the evidence shows that it was willing to sell the vinegar at 7½ cents a gallon after learning that its request for an increase would not be granted. In this connection reliance is placed upon the evidence that after the filing of this action it tendered some 2,700 gallons at 7½ cents per

gallon but that plaintiff refused to accept it. The evidence heretofore set forth clearly refutes this contention. The testimony of plaintiff's attorney shows without ambiguity that defendant refused to perform and repudiated the contract unless an increase was granted. ■ This repudiation, whether regarded as a present breach of an existing obligation to perform or as an anticipatory breach of an obligation which defendant had several months in which to complete performance, could not be retracted by the tender of 2,700 gallons made after suit was brought. It is well settled law that in cases of anticipatory breach the bringing of suit is a sufficient election to treat the repudiation as a breach and to prevent its retraction. (5 Williston on Contracts (rev. ed.), p. 3723, § 1323; Restatement of Contracts, §§ 318, 319.)

■ The defendant next urges a series of arguments relating to a claimed duty on the part of respondent to mitigate the damages. It is first urged that plaintiff should have accepted the 2,700 gallons tendered, and that it was error to allow damages based on the difference between the 7½ cent contract price and the 10 cents demanded on this gallonage. While it is true that there is a duty on the part of the innocent party to minimize damages (see discussion 5 Williston on Contracts (rev. ed.), p. 3875, § 1385), and while this duty may, in some cases, include the duty to buy from the defaulting seller at a demanded higher price on penalty of having damages limited accordingly (*Sargent* v. *North End Water Co.*, 190 Cal. 512 [213 P. 33]; *Severini* v. *Sutter-Butte Canal Co.*, 59 Cal.App. 154 [210 P. 49]; *Henrici* v. *South Feather Land etc. Co.*, 177 Cal. 442 [170 P. 1135]; *Mabb* v. *Stewart*, 147 Cal. 413 [81 P. 1073]), such duty does not extend to the compulsion of accepting at even the contract price less than the quantity specified in the contract where, as here, the circumstances show there was no intention to deliver the balance, at least where suit is filed before such imperfect tender. (§ 1764, Civ. Code; 2 Williston on Sales (2d ed.) p. 1495, § 599g; 5 Williston on Contracts (rev. ed.), p. 3877, § 1386.) Here, under the evidence most favorable to plaintiff, it reasonably can be inferred that the tender of the 2,700 gallons was not in good faith; that it was made to gain an advantage in the impending trial; and that no further vinegar would be offered at the contract price.

■ It is next urged that the trial court erred in computing damages on the balance of the undelivered gallonage at

the difference between 7½ cents a gallon and 10 cents a gallon. It is contended that plaintiff could have purchased this gallonage from defendant on a sliding scale at an amount averaging below 10 cents a gallon, and that the damages computed by this sliding scale would not exceed $6,360.35 instead of the $8,610.35 allowed by the trial court. The argument is unsound for several reasons. The sliding scale offer was made only on condition that it be accepted in lieu of all outstanding obligations. As already pointed out there had been violations of the original contract. Plaintiff could not be compelled to waive rights under the original contract. (See 5 Williston on Contracts (rev. ed.), p. 3795, § 1353; p. 3875, § 1385.) Moreover, it would appear that the damages allowed were substantially less than could have been allowed. No allowance for loss of profits, or the difference between the contract price and the market price, was allowed, as well might have been done. While plaintiff has not appealed, this factor is important in ascertaining whether the damages allowed were excessive. Here the evidence shows that defendant had the full gallonage on hand to fulfill its obligations under the contract, and that at the time of repudiation the price had gone up to 20 cents a gallon. Thus, with damages limited as they were to the difference between the contract price of 7½ cents and the 10 cents demanded, it is a reasonable inference that even with the payment of damages here allowed defendant made money on the deal. The damages, far from being excessive, were, if anything, too small. Defendant is in no legal position to object to the amount awarded.

The last contention of defendant needs but scant mention. It is urged that in fact it was plaintiff who breached the contract because, so it is contended, the parties by their prior dealings had placed the practical construction on their contracts that the price fixed therein was subject to change. In this connection reliance is placed on the evidence that in 1941 the parties orally agreed to raise the price from the original five cents a gallon to six cents, in 1942 orally agreed to fix the price at 7½ cents per gallon, and in 1943 fixed the price in writing at 7½ cents per gallon. The argument is without merit. The rule of practical construction cannot be so applied, certainly not as a matter of law. To say that, because one of the contracting parties agrees, on several occasions, he will pay a higher price than is provided in the contract, he is forever barred as a matter of law from insist-

ing on performance in accordance with the clear, unambiguous terms of the modified contract, is to urge a rule of law that would penalize fair dealing and kindness of heart. At most, the evidence or prior modifications was evidence of the parties' intent, but certainly not conclusive evidence. The trial court has determined this issue against defendant and its finding cannot be disturbed.

The judgment appealed from is affirmed.

Ward, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied February 7, 1947, and appellants' petition for a hearing by the Supreme Court was denied March 6, 1947.