[L. A. No. 20331. In Bank. Feb. 6, 1948.]

ROBERT SHANNON BUTTS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

John W. Preston for Petitioner.

Jerold E. Weil for Respondent.

THE COURT.—The State Bar charged petitioner with three acts of professional misconduct, violative of sections 6067, 6068, 6103 and 6106 of the State Bar Act, all committed in connection with his employment as an attorney by Janette Mack.

The local administrative committee concluded that petitioner should be subjected to discipline for only one of the acts charged, that of wrongfully withholding $252.75 contrary to an alleged fiduciary obligation, and recommended that petitioner be suspended from practice for a period of three months. With a slight modification of the committee's findings to show that petitioner had repaid the sum subsequent to the issuance of the notice to show cause, the board of governors, by an eight to six vote, adopted the committee's findings and recommendation. The six members based their negative vote on the ground that the degree of discipline recommended was too severe.

The matter comes before this court on a petition for writ of review. Petitioner contends that he has not committed any act of moral turpitude or dishonesty and that in any event the degree of punishment suggested is not justified by the facts in evidence.

The pertinent facts as found by the committee are these: Petitioner was admitted to practice in 1941. About January, 1946, Robert W. Mack and his wife Janette separated and the husband commenced an action for divorce in Los Angeles County. Mrs. Mack employed petitioner to represent her in the matter. A property settlement agreement was executed by the spouses, but prior to the date set for

trial of the divorce suit, and about June, 1946, the parties became reconciled. In August, they again separated and a new property settlement agreement was prepared by petitioner and executed by them.

This latter agreement, among other things, provided for the immediate payment to the wife of $1,000 and for delivery by the husband, concurrently with the execution of the agreement, of a check for an additional $1,000 made payable to both petitioner and the wife. The additional sum was to be delivered by petitioner to the wife pursuant to the terms of a trust receipt. This receipt was signed by petitioner on November 4, 1946. It stated, after acknowledging receipt of $1,000 which had been paid to petitioner on September 16th, the following:

"The undersigned agrees to deposit said check to his Trustee Account and to hold the funds represented thereby intact, subject to the fulfillment of the following express provisions:

"Provided only that Janette G. Mack shall secure a decree of divorce in Nevada on or before November 1, 1946, the undersigned will deliver said sum of $1,000.00 to Janette G. Mack. In the event that the undersigned fails to hold for and deliver to Robert Mack, on or before November 1, 1946, a certified copy of such decree of divorce, the said sum of $1,000.00 shall immediately be returned to said Robert Mack. . . ."

By a letter dated September 24, 1946, counsel for Mr. Mack authorized petitioner to release $250 of the $1,000 to Mrs. Mack, thus leaving $750 in the trust fund.

Mrs. Mack went to Nevada to establish a residence for divorce but before she had completed her compliance with the residence requirements in that state, she returned to California and, ignoring the terms of the property settlement agreement, instituted a divorce suit in the Superior Court in and for Los Angeles County. In this action she was represented by a new attorney. On October 29th, this new attorney wrote petitioner, saying with respect to the $750, "[Y]ou are specifically instructed not to release said funds except with the written consent and approval of my client . . .," and stating that if petitioner did so, he would be held personally responsible.

On October 30th, petitioner wrote Mr. Mack's attorney, telling him of the above letter and saying: "I consider my-

self to be purely an escrow holder and, not wishing to become personally liable to either party, I must refuse to disburse the fund in my hands until such time as the parties jointly agree upon the disposition. If no such joint agreement is reached I shall interplead in the pending divorce action and pay the money into Court. I have no desire to take sides with either party in this case but under the circumstances I feel that I must adopt a safe attitude and refuse to honor demands of either party until I am properly protected.''

On November 9th, Mrs. Mack died, and on November 11th, petitioner again wrote the attorney for Mr. Mack, saying: ''Of course you are aware of the unfortunate demise of Mrs. Mack. By reason of her death I am apparently no longer under restriction to return to you the monies I hold under my trust receipt. These monies total $750.00. I have advanced to Mrs. Mack, from my personal funds $200.00 for her living expenses since she had no personal funds with which to subsist. I hold a cancelled check to her order as evidence of this advance. In addition to this advance there are other small advances either to her or on account of court costs in the actions I handled for her aggregating $52.75. For convenience I have deducted these amounts from the sum I held for Mr. Mack. If this arrangement is not satisfactory to you please inform me and I will send my check for the deductions and seek other means of collection.'' After the writing of this letter, petitioner drew checks on the $750 fund, reimbursing himself in the sum of $252.75 and making the balance of $497.25 payable to Mr. Mack. Mr. Mack refused to accept the latter sum in full satisfaction of petitioner's obligation in the premises and demanded an additional $252.75.

Subsequently petitioner, as a creditor of Mrs. Mack, applied to the Los Angeles Superior Court for letters of administration and was appointed administrator of her estate. He then asserted a right to hold the $252.75 to offset the value of certain personal property of Mrs. Mack which he claimed Mr. Mack was withholding from the estate. However, after issuance of the notice to show cause herein, he paid Mr. Mack the $252.75.

Petitioner contends that he practiced no deceit or dishonesty upon anyone. The $252.75 represented amounts which he had advanced to the wife for necessaries, for which

he thought he could hold the husband liable. Moreover, he thought that the wife's estate too would be liable for his claim. Further, petitioner contends that the provision of the deposit receipt, construed with the property settlement agreement, making the $1,000 payment to the wife conditional upon her procurance of a Nevada divorce by a certain date, was invalid because promotive of divorce and contrary to public policy, and that with the elimination of this invalid provision, his obligation was such as justified his retention of the $252.75.

The several legal points involving the validity of the challenged provision need not be determined; for purposes of this opinion the provision may be assumed to be valid. It is apparent from the evidence, including the correspondence above quoted, that in the negotiations all of the parties at all times regarded the provision as valid, and acted upon that premise. While the petitioner is in a doubtful position to claim exoneration upon the ground of an invalidity, his conduct should be appraised in the light of the situation as it presented itself to him at the time the alleged wrongful acts were committed.

The undisputed facts show that the error committed by petitioner was not so much one of professional misconduct as one of failure to correctly assess his legal rights upon the death of the wife. That is, petitioner in effect sought, by retaining the $252.75, to compel an accounting between the husband, the wife's estate, and himself, without regard for the fact that he was in possession of the $252.75 in a fiduciary and not a personal capacity, and therefore was not entitled to withhold it to offset a personal claim.

Assuming that petitioner might have been justified had he decided to retain the entire trust fund until proper claim to it was established by either the husband or the wife's estate, on the theory that the unexpected severance of the marriage by death may have altered petitioner's fiduciary obligation, he was mistaken in asserting a right to withhold part of it as an offset to his personal claim. However, in view of the unusual circumstances and the complex legal problems inherent in the situation, the mistake appears to have been one of poor judgment as to the law and the proper procedure to protect his rights. To hold that it involved moral turpitude or constituted an act of professional misconduct would not be justified. Petitioner had befriended

a penniless client by supplying her with money for the necessaries of life. He had acted openly and in good faith in asserting a valid claim for $252.75. He erred only in his attempted method of collection. We conclude that the discipline recommended should not be imposed.

The proceeding is dismissed.