[L. A. No. 29552.   In Bank.   July 11, 1968.]

GEORGE E. TRAFTON, Plaintiff and Respondent, v. N. E. YOUNGBLOOD, Defendant and Appellant.

18

20

Ball, Hunt & Hart, Ball, Hunt, Hart & Brown. Joseph A. Ball, Joseph D. Mullender, Jr. and Bernard A. Murray for Defendant and Appellant.

Marvin Gross for Plaintiff and Respondent.

SULLIVAN, J.—Plaintiff George E. Trafton retained defendant N. E. Youngblood, an attorney at law, to represent him in settling some disputes arising out of the payment of a fire loss to a building. The insurance company had settled the loss but had made its check therefor payable jointly to Trafton, a Miss Gerry, beneficiary of a first deed of trust on the property, and the contractor hired by Trafton to repair the building. Miss Gerry refused to indorse the check and, although the contractor was paid by Trafton with other funds, the subcontractors who had worked on the building remained unpaid. These subcontractors had filed mechanics' liens against the property and had commenced foreclosure actions.

Youngblood, acting on behalf of Trafton, commenced an action against Miss Gerry, the insurance carrier and others to compel Miss Gerry's indorsement of the check. The contro-versy was eventually settled by an agreement whereby the insurance proceeds were placed in escrow. Miss Gerry

indorsed the check and deposited it in the escrow subject to instructions to deliver it to Trafton when the property was free and clear of all mechanics' liens. Trafton and the contractor in turn authorized disbursement of the escrowed funds by Youngblood who was to secure the necessary dismissals of foreclosure actions and releases of liens.

Trafton withdrew from the escrow an amount sufficient to reimburse himself for his payment to the contractor. Youngblood then withdrew the balance of the funds in escrow, which, after payment of taxes and escrow fees, amounted to $11,886.34. Of this amount he paid a total of $4,672.21 in settlement of the various lien claims. On August 9, 1961, Youngblood sent Trafton an itemized statement of his services rendered for Trafton and of costs advanced in connection with a number of legal actions including those arising out of the fire loss disputes. A recapitulation at the end of the statement showed funds in the total sum of $11,886.34 received and to be received by Youngblood, $12,495.50 disbursed by him and a balance due from Trafton in the sum of $609.16. The statement thus disclosed that, of the amount received, Youngblood had paid to himself the sum of $6,800 for services rendered in the several actions.

Trafton received the statement in Canada where he was then employed. On August 22, 1961, he replied by letter to Youngblood, stating in part: "I have tried to answer your last letter, referring to all the legal transactions you mentioned in your letter, but I have to beg off answering your letter until I return to the States, and check my files as to the authenticity of your claims. I will be back in Los Angeles no later than December 15, 1961, if God is willing." He returned to Los Angeles about December 15, 1961, but did not contact Youngblood. The latter sent several statements for a balance due of $609.16, which Trafton ignored. Eventually Youngblood abandoned the claim.[1] On August 7, 1963, Trafton commenced the instant action.

Trafton's complaint sets forth two causes of action. The first is a common count for money had and received in the sum of $7,400. The second cause of action alleges in substance that defendant received $11,886 from the escrow; that he was authorized "to act as escrow" and pay certain "claims and assessments" against plaintiff; that he satisfied certain claims amounting to $4,422; that he furnished plaintiff a

---

[1]Youngblood's secretary testified that in January 1963 he instructed her to "Forget it" and that no bills were sent to Trafton thereafter.

statement setting forth that he had satisfied claims amounting to $4,422 and "that the balance of approximately $7,464.00 was being diverted to certain claims the said defendant had against the plaintiff," and, "That defendant had no instruction or authority to pay over said sums to himself, and thereby violated the original escrow agreement between the parties."

In his answer Youngblood denied the material allegations of the first cause of action and set forth two affirmative defenses of (a) laches and (b) what was in effect an account stated.[2] Answering the second cause of action, Youngblood denied certain material allegations but admitted receipt of the $11,886.34, alleging in substance that he had received, disbursed and retained the funds as set forth in the accounting given plaintiff and accepted by the latter on August 9, 1961. He then set forth two affirmative defenses identical with those he alleged in answering Trafton's first cause of action (see fn. 2, ante). Youngblood also filed a cross-complaint against Trafton stating a cause of action on an account stated for a balance due in the sum of $609.16. Trafton answered the cross-complaint, denying its allegations.

The case was tried to the court sitting without a jury, Youngblood appearing in propria persona. Plaintiff's case consisted of the testimony of Youngblood, called under former Code of Civil Procedure section 2055 (see Evid. Code, § 776) and the testimony of plaintiff himself. Generally speaking, this evidence pertained to the opening of the escrow and the withdrawal of the funds.[3] However, during the cross-examination of plaintiff, a colloquy occurred concerning Youngblood's affirmative defense of account stated. As indi-

[2]This affirmative defense alleged: "Prior to the commencement of this action and on or about August 9, 1961, defendant made a full and complete written accounting to plaintiff for all moneys received and disbursed by defendant for the account of plaintiff, which accounting was received and accepted by plaintiff in full and complete settlement of such account, . . ." A copy of the statement was attached to the answer as "Exhibit A."

[3]Youngblood testified in substance that he had been consulted by Trafton in connection with his problem of securing Miss Gerry's indorsement; that he reviewed the matter with Trafton, ordered copies of the trust deed under which Miss Gerry had her encumbrance and examined them; that he made two separate trips to Coronado, California, in an attempt to secure Miss Gerry's indorsement on the check; that he filed an action against Miss Gerry and the insurance carrier, served Miss Gerry and took her deposition and "other depositions in various matters"; that Miss Gerry signed the escrow agreement and was released in the suit; that he set up the escrow; and that he obtained releases of all of the mechanics' liens and the then existing lawsuits against Trafton.

cated in the footnote,[4] the court then made it clear, and both counsel agreed, that the issue before the court was not the value of Youngblood's services but the existence of an account stated. The balance of the cross-examination of plaintiff dealt only with this latter subject.

In defense, Youngblood, on direct examination testified briefly and without interruption in a single narrative covering only 22 lines in the transcript. The gist of this testimony is that Trafton authorized Youngblood to use the escrowed funds to settle the various claims and lawsuits; that "after this was over I would bill him for the amount that we paid out to these various people and for fees and costs"; that he accounted to Trafton, and that except for one reply (see *ante*) he never received any communication from the latter or any objection to the fees.[5]

Following the trial a memorandum decision was written wherein the court rejected Youngblood's defenses of laches and account stated and continued: "Defendant, having chosen not to interpose an offset and counterclaim based on reasonable value of services rendered and costs incurred [see Code Civ. Proc., § 438 et seq.], judgment must be for the plaintiff and against the defendant Youngblood in the sum of $7,574.00, . . ." Thereafter, during oral argument on his objections to the proposed findings of fact, Youngblood con-

---

[4] "THE COURT: . . . Counsel, I have something to say that possibly you could clarify for me. MR. YOUNGBLOOD: Yes, your Honor. THE COURT: Now, the defense in this action, in addition to a denial, is an account stated; is that correct? MR. YOUNGBLOOD: Yes, your Honor. THE COURT: Now, there can be no account stated unless there is an existing indebtedness, so it wouldn't make any difference as to the reasonable value of your services. In order to support an account stated there would have to be an indebtedness. MR. YOUNGBLOOD: Surely. THE COURT: Then would the evidence on what you did do, Mr. Youngblood, be material, at least at this juncture under these pleadings? MR. YOUNGBLOOD: Well, I believe so, your Honor, for this reason, and I will develop that now at this time, if I may, because prior to the filing of this action, and as far back as August 9, 1961, a full and complete accounting was made to this plaintiff of the moneys received, and an account was stated to him at that time, and there was no—— may I go into this? ——and that may cover your Honor's point. THE COURT: Well, I don't want to get ahead of you gentlemen in the case, but I just didn't feel ——we are not here as to the value of services. MR. GROSS: That is correct, your Honor. THE COURT: But we are here on an account stated. MR. YOUNGBLOOD: You are correct, your Honor."

[5] He testified on cross-examination that he paid Hastings the amount of his claim, Bushman almost $200 less than their claim, Hansen Bros. Dry-Wall, Inc. $407.80 less than their claim, Culver Ready Mix $35.93 less than their claim, Betts-Sine Lumber Company $85.19 less than their claim, and Freeman $9,700 less than his claim. The foregoing six parties comprised the subcontractors who had filed mechanics' liens against the property.

tended that by his general denial of Trafton's first cause of action the issue of offsetting the reasonable value of his services properly had been raised. Youngblood also orally moved to reopen the case in order to be permitted to file an amended answer specifically alleging a counterclaim for the reasonable value of his services in the event the court did not accept his prior contention. Although neither a written motion nor amended answer was offered by Youngblood, both parties submitted the matter for determination and filed memoranda of points and authorities.

The court denied the foregoing motion at the same time as it filed the findings of fact and conclusions of law and the judgment.[6]

The trial court found, so far as is here material, that defendant received the funds from the title company in trust for plaintiff; that defendant wrongfully applied the balance of the funds to his claim for monies due him for legal services and costs advanced for both related and unrelated matters; that he had no lien on the funds; that there was no agreement fixing defendant's fees in any amount and that he had no authority to make deductions from the trust funds; and that there was no account stated between the parties.[7] Accordingly, judgment was entered against Youngblood and in favor of Trafton in the sum of $7,386.34, together with interest and costs.

Youngblood filed a notice of motion for a new trial, based on all applicable statutory grounds except that of newly discovered evidence (Code Civ. Proc., § 657, subd. 4), and, in the alternative, for "an order reopening the case for further proceedings and for the introduction of additional evidence on the question of the reasonable value of defendant's services as authorized by the *Code of Civil Procedure,* Section

[6]In its memorandum ruling on Youngblood's motion, the court stated, "No facts are presented in support of such motion and to explain the delay in making the same," and continued, "While motions to amend pleadings are to be liberally construed in the interest of justice, this unquestioned rule is subject to the corollary that litigants have no absolute right to amend a pleading at this stage of the proceedings. The law does not favor the trial of litigation piecemeal—a defendant may not, simply because a defense selected by him has been denied, select and add another and new defense in the hope that such might be sustained, the situation apparently here before the Court. If such were the law there would be no end to litigation. Good cause must be shown by the moving party and such has not here been done. Motion is denied."

[7]The court found there was no account stated because plaintiff never agreed to the statement sent by defendant and because "defendant, being an attorney and in possession of trust funds belonging to the plaintiff, could not strike a balance and create an account stated by wrongfully applying said trust funds to his claims against the plaintiff."

662.'' These motions were denied and this appeal followed.

Youngblood contends: (1) That Trafton's failure for two years to object to Youngblood's account created an account stated as a matter of law; (2) that the general denial of the common count for money had and received raised the issue of offsetting any sums due from Trafton to Youngblood; and (3) that even if the general denial did not raise the issue of offset, leave should have been granted to amend the answer in order to permit Youngblood to specifically plead the defense of an offset.

An account stated is an agreement, based on prior transactions between the parties, that all items of the account are true and that the balance struck is due and owing from one party to the other. (*Jones* v. *Wilton* (1938) 10 Cal.2d 493, 498 [75 P.2d 593]; *Wenban Estate, Inc.* v. *Hewlett* (1924) 193 Cal. 675, 701-702, 703-704 [227 P. 723]; *Parsons* v. *Segno* (1921) 187 Cal. 260, 263-265 [201 P. 580]; *Bennett* v. *Potter* (1919) 180 Cal. 736, 743, 744-746 [183 P. 156]; *Gardner* v. *Watson* (1915) 170 Cal. 570, 574-575 [150 P. 994]; *Coffee* v. *Williams* (1894) 103 Cal. 550, 556 [37 P. 504]; *Baird* v. *Crank* (1893) 98 Cal. 293, 298 [33 P. 63]; *Auzerais* v. *Naglee* (1887) 74 Cal. 60, 64-65 [15 P. 371]; see generally 1 Cal.Jur. 2d, Accounts and Accounting, § 42, p. 366; 1 Am.Jur.2d, Accounts and Accounting, § 21, p. 395; 1 C.J.S., Account Stated, § 1, p. 693; Schapiro, *Mutual, Open and Current Accounts, Book Accounts, Accounts Stated, and the Statute of Limitations* (1922) 11 Cal.L.Rev. 12, 14-15.) ''The bill of an attorney for services, like any other bill, may under proper circumstances and conditions be the subject of an account stated.'' (*Crane* v. *Stansbury* (1916) 173 Cal. 631, 636 [161 P. 7]; see *Parsons* v. *Segno, supra,* 187 Cal. 260, 265-266; *Jones* v. *Wilton, supra,* 10 Cal.2d 493; see also, 13 A.L.R.3d 701, 722-796; Rest., Contracts, § 422, illus. 2.) As in the case of any contract the agreement need not be express, but may be implied from the circumstances. ''If the account be sent to the debtor, and he do not object to it within a reasonable time, his acquiescence will be taken as an admission that the account is truly stated.'' (*Terry* v. *Sickles* (1859) 13 Cal. 427, 429; see *Parsons* v. *Segno, supra,* 187 Cal. 260, 263-265; *Crane* v. *Stansbury, supra,* 173 Cal. 631, 636-637; *Mayberry* v. *Cook* (1898) 121 Cal. 588, 588-590 [54 P. 95]; *Hendy* v. *March* (1888) 75 Cal. 566, 567-568 [17 P. 702]; *Auzerais* v. *Naglee, supra,* 74 Cal. 60, 64; 1 Cal.Jur.2d, Accounts and Accounting, § 52, pp. 379-380.)

■ However, since accounts stated were "intended to preserve and protect legitimate demands but not to create obligations independent of prior indebtedness" (*Hemenover* v. *Lynip* (1930) 107 Cal.App. 356, 363 [290 P. 1089]), the rendering of an account, although not objected to, cannot create a liability where no liability existed before. (*Bennett* v. *Potter, supra,* 180 Cal. 736, 746; *Merchants' Nat. Bank* v. *Carmichael* (1918) 178 Cal. 446, 448-449 [173 P. 999]; see also *Curtis* v. *Mendenhall* (1962) 208 Cal.App.2d 834, 840 [25 Cal.Rptr. 627]; *Burke* v. *Ikuta* (1952) 113 Cal.App.2d 724, 727 [248 P.2d 962]; *Wine Packing Corp. of Cal.* v. *Voss* (1940) 37 Cal.App.2d 528, 539-540 [100 P.2d 325]; 1 C.J.S., Account Stated, § 14, pp. 698-699; 6 A.L.R.2d 113.) ■ It is on this latter basis that we conclude that the trial court properly found no acquiescence in the statement of account arising from Trafton's failure to object thereto and that we reject Youngblood's first contention.

■ Although an attorney is entitled to recover the reasonable value of his services if there is no express employment contract providing for his compensation (Code Civ. Proc., § 1021; *Buck* v. *City of Eureka* (1899) 124 Cal. 61, 66 [56 P. 612]; *Elconin* v. *Yalen* (1929) 208 Cal. 546, 548-549 [282 P. 791]; see 143 A.L.R. 672, 56 A.L.R.2d 13), he "may not unilaterally determine his own fee and withdraw funds held in trust for his client in order to satisfy it, without the knowledge or consent of the client." (*Most* v. *State Bar* (1967) 67 Cal.2d 589, 597 [63 Cal.Rptr. 265, 432 P.2d 953]; see *Butts* v. *State Bar* (1948) 31 Cal.2d 453, 457 [189 P.2d 1]; *McGrath* v. *State Bar* (1943) 21 Cal.2d 737, 741 [135 P.2d 1].)

■ The trial court found that there was no agreement providing for Youngblood either to fix his fee or to withdraw funds in order to satisfy it. Therefore, the statement of account sent to Trafton on August 9, 1961, contained not only specifications of amounts allegedly owed by him for the reasonable value of Youngblood's services, but also statements of amounts improperly diverted by Youngblood from the escrow. To that extent, in the words of the trial court, the statement "was a memorandum of a fait accompli of an erroneous, mistaken, and wrongful act, of a taking of an unfair advantage over the plaintiff to effect immediate payment in violation of defendant's admitted fiduciary relationship, and obligation to bill plaintiff as a condition precedent." Consequently, the amount shown in the statement as a "balance due" did not represent a preexisting liability.

In an attempt to circumvent this obstacle Youngblood contends that, as a matter of law, we must construe Trafton's failure to object to the statement of account not only as an assent to pay the amount therein specified as the reasonable value of Youngblood's services rendered, but also as an implied consent to Youngblood's diversion of the funds held in trust in partial satisfaction of the debt. Since the funds were not liable for payment of the debt before the rendering of the account, to imply such a consent would be to permit the creation of the obligation by the rendering of the account "independent of prior indebtedness." (*Hemenover* v. *Lynip, supra,* 107 Cal.App. 356, 363.)

■ The relationship between an attorney and his client "is one of a strict fiduciary and confidential nature." (*Bradner* v. *Vasquez* (1954) 43 Cal.2d 147, 151 [272 P.2d 11]; *Magee* v. *State Bar* (1962) 58 Cal.2d 423, 429-430 [24 Cal. Rptr. 839, 374 P.2d 807]; *Rader* v. *Thrasher* (1962) 57 Cal.2d 244, 250 [18 Cal.Rptr. 736, 368 P.2d 360]; *Metropolis Trust & Sav. Bank* v. *Monnier* (1915) 169 Cal. 592, 598 [147 P. 265]; *Cooley* v. *Miller & Lux* (1909) 156 Cal. 510, 523-524 [105 P. 981].) His fiduciary duty involves more than refraining from exercising undue influence, but it is "of the very highest character." (*Marsh* v. *State Bar* (1930) 210 Cal. 303, 307 [291 P. 583]; *Magee* v. *State Bar, supra,* 58 Cal.2d 423, 430; *Marlowe* v. *State Bar* (1965) 63 Cal.2d 304, 308 [46 Cal.Rptr. 326, 405 P.2d 150].) ■ On this basis Civil Code section 2235 has been deemed applicable to contractual dealings between an attorney and his client during the existence of the attorney-client relationship. (See *Rader* v. *Thrasher, supra,* 57 Cal.2d 244, 249-250; *Bradner* v. *Vasquez, supra,* 43 Cal.2d 147, 151; *Metropolis Trust & Sav. Bank* v. *Monnier, supra,* 169 Cal. 592, 598; *Cooley* v. *Miller & Lux, supra,* 156 Cal. 510, 523-524.) That section provides: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence. The presumptions established by this section do not apply to the provisions of an agreement between a trustee and his beneficiary relating to the hiring or compensation of the trustee."

We said in *Bradner* v. *Vasquez, supra,* 43 Cal.2d 147, 152: "When a fiduciary enters into a transaction with a beneficiary whereby the fiduciary's position is improved, or he obtains a

28

favorable opportunity, or where he otherwise gains, benefits, or profits, it may fairly be said that an advantage has been obtained. To declare that the advantage obtained must be shown to be unfair, unjust, or inequitable before the presumptions arise would result in the imposition of a condition which is not required by section 2235." (See *Rader* v. *Thrasher, supra*, 57 Cal.2d 244, 250.)

The withdrawal of funds held in trust by Youngblood for the purpose of paying his own fees and the attempt by such unilateral act to transmute trust property insulated from such diversion to property with a nontrust status freely available for such purpose, would certainly confer an advantage on Youngblood. His claim would have been immediately satisfied without his having had to resort to submitting a bill to Trafton and the burden of obtaining any recovery for an excessive fee would have been upon the latter. Indeed, if the statement could have formed the basis of an account stated Trafton would have been precluded from questioning the amount of the fee.

We are of the view that the burden was upon Youngblood "to show that the transaction was fair and regular and was entered into by [Trafton] voluntarily with a *full knowledge of the facts.*" (Italics added.) (*Magee* v. *Brenneman* (1922) 188 Cal. 562, 569 [206 P. 37]; see *Estate of Witt* (1926) 198 Cal. 407, 419 [245 P. 197]; *Cline* v. *Zappettini* (1955) 131 Cal.App.2d 723, 727 [281 P.2d 35]; 13 A.L.R.3d 738, 749, 757.) In the instant transaction, as in any business transaction between an attorney and client, "the client must be placed in a position that enables him to act meaningfully, voluntarily, and with full legal advice before any contract between him and his client involving such a venture can be sustained. The mere fact that the contract might be fair or even advantageous does not eliminate or nullify the fiduciary duty of the attorney." (*Gold* v. *Greenwald* (1966) 247 Cal. App.2d 296, 311 [55 Cal.Rptr. 660].) We cannot conclude as a matter of law that consent to diversion of trust funds by Youngblood was shown solely by his client's failure to object to a statement of account which merely presented the diversion as a *fait accompli.*

We now turn to defendant's contention that his general denial of plaintiff's common count for money had and received raised the issue of defendant's right to offset the reasonable value of his services and of the costs advanced by him. His argument runs as follows: Plaintiff is unquestiona-

bly indebted to defendant for fees and costs; defendant performed services as requested and plaintiff impliedly agreed to pay their reasonable value, indeed expressly admitted at trial that he expected to pay for them; in response to plaintiff's charge of an indebtedness for money had and received, defendant was entitled to show there was no such indebtedness because there was no obligation to return either all or part of the money; he could make this showing by establishing the reasonable amount of fees and costs owed in turn by plaintiff to defendant; and he was not foreclosed from doing so merely by having pleaded an affirmative defense of account stated.

While the parties in their briefs have joined issue on this narrow point of pleading, it is not necessary for us to resolve it since defendant's defeat in the court below results from more decisive factors in the record. This is not a case where the court excluded, as being not within the issues,[8] evidence offered by defendant during trial to show the reasonable value of his services. Nowhere does defendant assert such a claim. Rather this is a case where from the start and all throughout the trial, defendant intentionally and designedly decided to resist plaintiff's claim of liability *solely* by showing that there had been a full accounting made to plaintiff which had been accepted by plaintiff in full and complete settlement (see fn. 2, *ante*) and that therefore defendant's offsetting debt against plaintiff had been irrevocably established. When questioned by the court defendant, himself an experienced attorney, made this position crystal clear. At no time during the trial did he advise the court that he wished to present evidence so that the court could determine the reasonableness of the fees and costs due defendant. Nowhere in the record is there any proffer of evidence for such purpose, much less any ruling excluding it. As we have pointed out (see fns. 3 and 4 and accompanying text), the only evidence in the record relating to Youngblood's services was introduced to establish the background and circumstances of the alleged account stated.

It is manifest to us that defendant deliberately pursued the trial tactic of asserting his claim for fees and costs as an account stated, so that the court would *not* determine their

[8]The record contains no pretrial conference order. We are therefore not assisted by any statement delineating "the issues remaining in dispute" (Cal. Rules of Court, rule 214(a)(1)) which "controls the subsequent course of the case" (*idem.*, rule 216).

reasonableness but on the contrary would have to accept the asserted balance as already agreed to and no longer subject to judicial review or reevaluation. Only after the court filed its memorandum of decision and defendant realized that his defense tactics had backfired, did he then seek to change them so as to assert a defense which he had disclaimed and to seek the court's determination of a matter which theretofore he had carefully avoided being adjudicated. In short, having designedly tried the case on one theory, defendant, upon learning that he had lost, sought to reopen it on another in the hope of averting the inevitable adverse judgment. To the device which he invoked to attain this objective, we now turn our attention.

Defendant's final contention is that leave should have been granted by the trial court in order to permit him to amend the answer so as to specifically plead an offset for the reasonable value of his services rendered and costs advanced. It will be recalled that defendant moved to reopen the case on two occasions: first after the filing of the court's memorandum of decision but just prior to the preparation and filing of the findings of fact and conclusions of law, at which time defendant sought to file an amended answer (see Code Civ. Proc., §§ 469-471, 473, 576); and secondly, in conjunction with his motion for a new trial at which time he sought relief under Code of Civil Procedure section 662. At oral argument before us, defendant made clear that he complains of error only in respect to the first motion. We point out that the only mention of this motion in the instant record is found in a second memorandum of the court filed at the same time as the findings and in certain memoranda of points and authorities submitted by the parties below. The foregoing do not enlighten us as to the substance of the motion or as to what transpired at the argument upon the motion; nor, as already indicated, has defendant included in this record any transcript of the oral proceedings had upon such motion. We also point out that defendant at no time prepared or tendered to the court below the proposed amended pleading. (See 2 Witkin, Cal. Procedure (1954) p. 1602; 2 Chadbourn, Grossman & Van Alstyne, Cal. Pleading (1961) p. 337.) Although the record does not so specify,[9] defendant asserts that he in fact moved to amend his

---

[9]We know only that a motion "to reopen the case to permit the filing of an amended answer to plead reasonable value of services as a counterclaim and set-off" was made and that it was denied for the reason that "No facts are presented in support of such motion or to explain the delay in making the same." (See fn. 6, *ante.*)

answer to conform to the proof and that the court erred in denying his motion.

It is of course settled that the allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears that such discretion has been abused. (Code Civ. Proc., §§ 469, 470, 473, 576; *McNamara* v. *Steckman* (1927) 202 Cal. 569, 572 [262 P. 297]; *Young* v. *Three for One Oil Royalties* (1934) 1 Cal.2d 639, 648 [36 P.2d 1065]; *Campagna* v. *Market St. Ry. Co.* (1944) 24 Cal.2d 304, 308 [149 P.2d 281].) Such amendments have been allowed with great liberality ''and no abuse of discretion is shown *unless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced* [citation].'' (Italics added.) (*McNamara* v. *Steckman, supra*, 202 Cal. 569, 572; 39 Cal.Jur.2d, Pleading, § 258, p. 379; 2 Chadbourn, Grossman & Van Alstyne, *op.cit. supra,* §§ 1097, 1104; 2 Witkin, *op.cit. supra,* Pleading, § 601.)

As we said in *Lavely* v. *Nonemaker* (1931) 212 Cal. 380, 385 [298 P. 976], ''amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend. [Citations.]'' (See *Healy* v. *Brewster* (1963) 59 Cal.2d 455, 464 [30 Cal. Rptr. 129, 380 P.2d 817]; *McClure* v. *Donovan* (1949) 33 Cal. 2d 717, 731-732 [205 P.2d 17]; *Bank of United States* v. *Foreman* (1929) 102 Cal.App. 756, 764 [283 P. 874]; *Richter* v. *Adams* (1937) 19 Cal.App.2d 572, 577-578 [66 P.2d 226]; *Weinberg* v. *Dayton Storage Co.* (1942) 50 Cal.App.2d 750, 758-759 [124 P.2d 155]; *Crown Products Co.* v. *California Food etc. Corp.* (1947) 77 Cal.App.2d 543, 549-550 [175 P.2d 861]; *Makovsky* v. *Makovsky* (1958) 158 Cal.App.2d 738, 744-745 [323 P.2d 562]; *Winberry* v. *Lopez* (1960) 178 Cal.App. 2d 672, 678 [3 Cal.Rptr. 245]; *Brautigam* v. *Brooks* (1964) 227 Cal.App.2d 547, 560-561 [38 Cal.Rptr. 784]; 71 C.J.S., Pleading, § 285.)

During the trial of this cause defendant at no time raised an issue as to the reasonable value of his services and costs. Quite the contrary, he renounced any such issue. As we have pointed out, he made no attempt to offer evidence as to reasonable value and confined his efforts to proving that his

offsetting claim for services and costs had been agreed upon. Scant evidence as to defendant's services was therefore received on the issue of account stated which not only had been specifically raised by the pleadings but also had been acknowledged by defendant as the *sole* basis for his offsetting claim. The testimony, such as it was, merely dealt with the background events of the account stated and under the circumstances of the trial could not have been deemed to be offered on any issue of *quantum meruit.*

Nevertheless, defendant, directing our attention to this testimony, insists that "From the evidence of Youngblood's services now in the record . . . , the court could determine their reasonable value." Actually, on this mere fortuity, defendant attempts to inject a new issue into the case under the guise of an amendment to conform to the proof. ■■■ As we said in another context in *Riverside Water Co.* v. *Gage* (1895) 108 Cal. 240, 245 [41 P. 299], "It is frequently the case that evidence which is admissible to establish one issue may tend to establish another issue than that for which it is offered, and it is a rule that evidence so introduced is available to establish any of the issues in the case. This rule is, however, limited to the issues *which are to be tried. If the other issue that the evidence may tend to establish is not before the court the evidence must be limited to the actual issue.* ■■■ The fact of its introduction cannot be used to establish an issue that the parties have not made in their pleadings. *The court would not be authorized to consider it as establishing an issue that was not before it for trial."* (Italics added.) (See *Lein* v. *Parkin* (1957) 49 Cal.2d 397, 401 [318 P.2d 1] ; *Miller* v. *Peters* (1951) 37 Cal.2d 89, 93-94 [230 P.2d 803] ; *Crescent Lbr. Co.* v. *Larson* (1913) 166 Cal. 168, 171 [135 P. 502].) ■■■ The record clearly shows that the issue of reasonableness of services, by the explicit agreement of the parties, was not before the court. It is manifest, therefore, that the allowance of defendant's purported amendment to conform to the proof would have substantially prejudiced Trafton who had had no opportunity to offer evidence on such issue during the trial.

We therefore conclude that the trial court did not abuse its discretion in rejecting the amendment. This conclusion, which rests soundly on the record viewed in the light of the settled principles we have discussed, is not free of the disquieting thought that it may bestow upon Trafton a windfall. Our acceptance of this possibility however rests upon our convic-

tion that all of this has come to pass as a consequence of defendant's own deliberate choice.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Appellant's petition for a rehearing was denied August 8, 1968.