Filed 9/22/21  In re A.M.C. CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.M.C., a Person Coming Under the Juvenile Court Law. | H047283 (Santa Clara County Super. Ct. No. JD025486) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. S.W. et al., Defendants and Appellants. | |

**THE COURT[1]**

Six-year-old A.M.C. has been a dependent of the juvenile court since 2019.  S.W. is his mother (Mother) and A.C. III is his father (Father).  Mother and Father appeal the juvenile court's findings made at the Welfare and Institutions Code[2] section 387 jurisdiction and disposition hearing held on September 10, 2019.

Mother and Father argue the juvenile court violated their due process rights when it amended an allegation in the supplemental petition to conform to proof.  Father also

---

[1] Before Greenwood, P. J., Grover, J. and Danner, J.

[2] All further unspecified statutory references are to the Welfare and Institutions Code.

argues there was insufficient evidence to support the juvenile court's jurisdiction finding as to four counts in the petition, and Mother argues there was insufficient evidence as to the amended count in the petition.

Mother and Father both argue that there is not substantial evidence to support the juvenile court's order removing A.M.C. from their custody.

We find the juvenile court did not err when it amended the supplemental petition to conform to proof, and there is substantial evidence to support the juvenile court's jurisdiction findings as to both parents. We also find there is substantial evidence to support the juvenile court's order removing A.M.C. from the parents. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

### 1. Section 300 Petition

Due to ongoing domestic violence between the parents in the presence of then three-year-old A.M.C., and the parents' substance abuse, the Department filed a section 300 petition on November 26, 2018. The petition alleged that A.M.C. was at serious risk of physical and emotional harm because Mother and Father engaged in domestic violence in his presence, and from the parents' ongoing substance abuse.

At the initial hearing on November 28, 2018, the juvenile court found A.M.C. was a child described by section 300 and that continuing in Mother's care was contrary to his welfare. The juvenile court ordered that A.M.C. remain in the care of Father, who was living with the paternal grandparents.

### 2. February 5, 2019 Jurisdiction and Disposition Hearing

The reports prepared for the February 5, 2019 jurisdiction and disposition hearing stated that Father completed a drug assessment during which he said he had been clean and sober for five years. He relapsed in December 2018 when he used methamphetamine. Father tested positive for methamphetamine on December 14 and

---

[3] We carefully considered the complete record in this case and include only those facts that are relevant to the issues presented in this appeal.

2

December 17, 2018, and failed to take three other drug tests between December 18, 2018, and January 2, 2019. The substance abuse evaluator referred him to an outpatient drug treatment program. The outpatient program evaluated Father and found that he did not meet the criteria for treatment because he had only used drugs once in six years and he was not functionally impaired due to substance abuse. Father tested negative for drugs five times in January. Father missed two scheduled drug tests.

The social worker reported that she believed that A.M.C. was safe in Father's care with the support of the paternal grandparents. The social worker also believed that A.M.C. would be safe in Mother's care.

At the jurisdiction and disposition hearing on February 5, 2019, Mother and Father submitted on the petition. The juvenile court sustained the petition and declared A.M.C. a dependent of the juvenile court. The juvenile court ordered that the Department provide family maintenance services and that Mother continue to live with the maternal aunt and Father live with the parental grandparents.

The juvenile court ordered Mother to complete a parent orientation, a 16-week parenting without violence class, counseling to address domestic violence, a substance abuse assessment and recommended treatment, random drug testing, a 12-step program and an aftercare program. The juvenile court also ordered Father to complete a 16-week parenting without violence class, therapy to address the effects of addiction and violence on A.M.C., and random drug tests.

### 3. *April 2019 Section 387 Supplemental Petition*

In April 2019, the Department filed a supplemental petition under section 387 seeking removal of A.M.C. from Mother because of her ongoing substance abuse. The Department recommended that Mother receive reunification services and Father receive family maintenance services.

The social worker reported that between February and April 2019, Mother tested positive for methamphetamine three times, missed ten drug tests, had three dilute tests,

3

one negative test, and was unable to produce a sample four times. Mother completed a drug and alcohol assessment and started an outpatient drug treatment program on March 18, 2019, but quit shortly thereafter. Mother told the social worker that she had been attending a 12-step program but did not provide proof of her attendance. In March and April 2019, Mother tested positive for drugs three times, missed her tests three times, and could not produce an adequate sample four times. By May, however, Mother had three negative drug tests.

Mother started individual therapy in March 2019, but quit because she did not believe the therapist had enough experience. Mother would not participate in a psychological evaluation. Mother started with a new therapist in April 2019.

Mother missed the parent orientation held in April 2019. She had enrolled in the parenting without violence class but was dropped from the class after missing two sessions. Mother was scheduled to begin the class again in June 2019 and was on a wait list for a domestic violence support group.

On April 25, 2019, the juvenile court detained A.M.C. from Mother.

**4. *June 2019 Section 387 Supplemental Petition***

On June 25, 2019, the Department filed a supplemental petition under section 387 seeking to remove A.C. from Father. The supplemental petition alleged six counts summarized as follows: S-1: Father failed to participate in family maintenance services after A.C. was removed from Mother in April 2019 and placed with Father; S-2: Father failed to consistently drug test; S-3: Father failed to participate in his parenting classes and counseling for domestic violence; S-4: Father failed to participate in substance abuse treatment; S-5: Mother failed to consistently drug test and had untreated substance abuse issues; S-6: Mother failed to participate in her family reunification services.

The social worker believed that Father's failure to address his substance abuse issues and his lack of participation in family maintenance services placed A.M.C. at risk of harm. Father had not been attending his individual therapy or 12-step meetings.

4

Father's drug tests were inconsistent. He tested positive on February 22, 2019, missed a drug test on March 12, 2019, and then had several negative tests. Father missed two drug tests in May 2019 and had a diluted test on June 10, 2019.

A.M.C. was having emotional difficulties and was acting out by having tantrums. A.M.C. had a hard time staying calm. A behavioral specialist from Community Solutions was working with A.M.C. and his grandparents in their home. The social worker believed that A.M.C. was acting out because of the chaos and domestic violence he had witnessed between his parents.

Father told the social worker that he was overwhelmed caring for A.M.C. Father had not been meeting with A.M.C.'s care providers at Community Solutions.

At the June 26, 2019 detention hearing on the section 387 petition, the juvenile court ordered A.M.C. removed from Father's care.

### 5. *Contested Hearing on Supplemental Petition*

A contested jurisdiction and disposition hearing on the supplemental petition was held on August 30, 2019, and September 10, 2019.

The Department prepared several status reports for the contested hearing. The reports stated that Mother had completed the Mariposa inpatient substance abuse treatment program and had tested negative since the date she entered the program on June 7, 2019. Mother was attending weekly therapy sessions and was also seeing a psychiatrist for mental health treatment.

Mother's visits with A.M.C. had been going well. Mother participated in supervised visits with A.M.C. three times per week for two hours at a time. Mother was appropriate with A.M.C., provided good boundaries and had a strong bond with him.

Mother had made progress in her plan but was still in the early stages of substance abuse recovery. The social worker was concerned that returning A.M.C. to Mother's care would be premature, and could affect the positive progress A.M.C. had made while placed with his paternal grandparents.

Father had been re-referred to the parent orientation since the last court date. Father had not yet begun therapy to address his mental health needs. Father tested negative on June 21 and June 25, 2019, but missed a test on July 1, 2019. Between July 9 and August 26, 2019, Father tested negative on three drug tests, provided an insufficient sample for two tests, missed two tests, and provided a diluted test once.[4]

As part of his case plan, Father was required to participate in therapy to address addiction and substance abuse and the impact of domestic violence on children. The social worker had referred Father to a therapist, but Father did not attend his appointments. Father complained to the social worker about the therapist's location, so the social worker provided him with a list of other therapists near him and told Father to choose one. Father did not choose a therapist and did not obtain other mental health treatment.

The social worker noted that the parents had not yet demonstrated an ability to refrain from domestic violence, and placing A.M.C. in either of their care under the circumstances would not be safe. The social worker believed the parents should have more time to participate in the conflict and accountability class and Mother should participate in domestic violence support groups before A.M.C. could safely be returned to the parents' care. The social worker recommended that both parents receive family reunification services.

At the contested hearing on August 30, 2019, the Department called Mother as an adverse witness. Mother testified that she completed the Mariposa inpatient substance abuse treatment program and graduated in August 2019. Mother started therapy in April and had seen her first therapist four times and her current therapist three times. Mother testified that she was currently living in a Solace House, which is a sober living

---

[4] In his opening brief, Father cites information from "Healthnet.com" about the cause of diluted drug tests. This information is not part of the record on appeal; therefore, we will not consider it. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1239.)

environment. She also stated that there was a family bed available at Solace House if A.M.C. were returned to her. Mother said that she had been attending 12-step meetings every day since her graduation from Mariposa but had not provided verification of attendance to her social worker.

Mother testified that she was taking Suboxone for drug addiction and was attending Suboxone support groups. She said she was testing three times per week.

Mother had not yet completed the parent orientation but was scheduled to start the conflict and accountability class soon. Mother was communicating with her social worker regularly; however, she felt her social worker was not providing her adequate support. Mother had been asking her social worker if she could have unsupervised visits with A.M.C.

Mother testified that she believed she was doing what she needed to do to have A.M.C. returned to her. Mother believed that if A.M.C. was returned to her, she would remain clean and sober.

Social worker Christina Zarrabi testified and recommended that A.M.C. remain in the home of the paternal grandparents and reunification services be provided for both parents. Mother was making progress in her treatment program. Mother's last positive drug test was on June 7, 2019, the day she entered the Mariposa treatment program. Mother completed Mariposa on August 26, 2019, and moved into a sober living house. Mother had been taking Suboxone since June and was consistently testing negative.

Ms. Zarrabi testified that because Mother was in an early stage of recovery, she was very vulnerable to relapse. Ms. Zarrabi wanted to see Mother continue to test clean and follow all the rules of her sober living environment. Ms. Zarrabi was concerned about Mother's ability to safely care for A.M.C. because she had been sober for such a short time.

As part of the reunification plan, Ms. Zarrabi wanted the parents to attend a conflict and accountability class to address their ongoing domestic violence. Mother had

7

completed the intake for the class and recently started attending the class. She also wanted Mother to attend a domestic violence support group. To Ms. Zarrabi's knowledge, there had been no domestic violence incidents between the parents since May 23, 2019.

Ms. Zarrabi testified that A.M.C. was bonded to both parents and loved them very much; however, A.M.C. was showing aggressive and angry behavior that could have been caused by exposure to domestic violence between the parents. While A.M.C. was in his parents' care, his medical and dental care was not current, and he was not consistently attending therapy. Ms. Zarrabi testified that the public health nurses had difficulty scheduling appointments for A.M.C. with the parents.

Ms. Zarrabi testified that since A.M.C. had been being cared for by the paternal grandparents, he had been attending all his medical and therapy appointments. A.M.C.'s therapist believed that he was in a stable placement and was making progress. Ms. Zarrabi believed that it would be premature to return A.M.C. to his parents because it could hinder the progress A.M.C. had made so far.

### 6. *Order of the Juvenile Court*

At the conclusion of the contested hearing, the juvenile court found true the allegations in the supplemental petition as to Father stated in S-1 through S-4. The juvenile court amended the allegations in S-5 to include a statement that Mother was early in recovery from substance abuse.

As to the allegations in S-6, which originally addressed Mother's failure to participate in family reunification services, the juvenile court struck the allegations entirely, and added in its place a new allegation as to Mother and Father's care of A.M.C. The allegations in the original S-6 were as follows: "Further, the mother has been court-ordered to participate in child welfare services since 02/05/2019 based in part on her substance abuse and its negative impact on her ability to parent the child, and has been provided with referrals and support to participate in those services which have included

8

parent education, counseling, drug testing, attend a 12-step program, complete a substance abuse assessment and follow its recommendations, participate in an aftercare relapse prevention plan. The mother has had inconsistent engagement with the services and despite being provided services to address her substance abuse issues, the mother has continued to abuse substances since the child was returned to her care on 02/05/2019 under a plan of family maintenance services. The mother's ongoing substance abuse, failure to engage in court-ordered Family Maintenance Services and poor insight and judgment regarding her addiction places the child at serious risk of harm in her care." The newly amended allegations in S-6 state: "[A.M.C.'s] health and mental health needs were not being met while he was in the custody of the mother and/or the father."

The juvenile court concluded that A.M.C. would be at substantial risk of harm if he were to return to his parents. The juvenile court noted that Mother had a long history of substance abuse and was still very early in her recovery. The juvenile court also noted that Father was not consistently meeting with A.M.C.'s care providers and did not recognize that A.M.C. needed mental health treatment.

The juvenile court found by clear and convincing evidence that A.M.C.'s welfare required that his physical custody be removed from Mother and Father, that there were no reasonable means to protect A.M.C. without removal, and reasonable efforts had been made to prevent removal. The juvenile court ordered family reunification services for Mother and Father.

Mother and Father filed timely notices of appeal in September 2019.

## II. DISCUSSION

On appeal, Mother and Father argue the juvenile court violated their due process rights when it amended the allegations in S-6 of the supplemental petition to conform to proof. Father also argues the evidence is insufficient to support the allegations in S-1 through S-4 of the supplemental petition that he failed to participate in services and had

9

not adequately addressed his substance abuse issues and Mother argues there is insufficient evidence to support the allegations in S-6. Finally, Mother and Father argue there is not clear and convincing evidence that removal of A.M.C. was required to keep him safe.

### 1. *Amendment of Section 387 Petition to Conform to Proof*

" 'A parent's fundamental right to adequate notice and the opportunity to be heard in dependency matters involving potential deprivation of the parental interest [citation] has little, if any, value unless the parent is advised of the nature of the hearing giving rise to that opportunity, *including what will be decided therein.* Only with adequate advisement can one choose to appear or not, to prepare or not, and to defend or not.' [Citation.]" (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 746, italics added; see also *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1037 (*Jessica C.*) ["In the initial 'pleading' stage, the role of the petition is to provide 'meaningful notice' that must 'adequately communicate' social worker concerns to the parent."].)

"[Welfare and Institutions Code] [s]ection 348 provides that provisions in the Code of Civil Procedure relating to variance and amendment of pleadings in civil actions apply to juvenile dependency petitions and proceedings. Amendments to conform to proof are permitted, but material amendments that mislead a party to its prejudice are not allowed. (Code Civ. Proc., §§ 469-470.)" (*In re Andrew L.* (2011) 192 Cal.App.4th 683, 688-689.)

In dependency proceedings, as in civil law in general, "amendments to conform to proof are favored, and should not be denied unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice." (*Jessica C., supra,* 93 Cal.App.4th at p. 1042.) But "[i]f a variance between pleading and proof . . . is so wide that it would, in effect, violate due process to allow the amendment, the court should, of course, refuse any such amendment." (*Id.* at pp. 1041-1042, citations omitted.) "Amendments of pleadings to conform to the proof should not be allowed

10

when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend. [Citations.]' [Citations.]" (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31 (*Trafton*).)

### a. Forfeiture

"An appellate court generally will not consider a challenge to a trial court's ruling if the aggrieved party could have, but did not, timely object in the trial court when its purported error could easily have been corrected. [Citations.] However, '[a]pplication of the forfeiture rule is not automatic.' [Citations.] An appellate court has discretion to excuse forfeiture in cases involving important legal issues. [Citation.] (*In re M.S.* (2019) 41 Cal.App.4th 568, 588-589 (*M.S.*).)

Citing this court's decision in *In re Daniel C.H.* (1990) 220 Cal.App.3d 814, the Department argues Mother and Father forfeited their due process appellate challenge to the amendment of the allegation in S-6 because they did not raise due process objections in the juvenile court. The Department notes that Father did not object to the amendment and instead argued there was not sufficient evidence to support the allegation. Mother did object to the amendment but her stated reason for doing so was that the evidence was insufficient to support the amendment. The Department asserts these objections were insufficient to preserve the due process issue for appeal.

Here, while Mother and Father did not specifically object to the amendment on due process grounds, they objected to the substance of the amendment. We will exercise our discretion to consider the due process issue on appeal. (See, *M.S., supra*, 41 Cal.App.4th at pp. 588-589.)

### b. Merits

The amendment according to proof added allegations of the parents' inadequate care of A.M.C. in S-6, which the parents assert was based on a new theory and required proof of different facts than those alleged in the supplemental petition. The original allegations in the petition related to the parents' poor participation in their case plans and

11

their continued substance abuse; there was nothing alleged in the supplemental petition related to A.M.C.'s care. Evidence of the parents' care of A.M.C. was introduced through the social worker's testimony that A.M.C. was not participating regularly in therapy, and he was not attending his medical and dental appointments. The social worker also testified that the public health nurses had difficulty scheduling appointments with the parents.

The parents argue they had no notice that their care of A.M.C. would be an issue at the hearing on the supplemental petition. Therefore, they were not prepared to present evidence at the hearing to counter the allegation of their insufficient care. The record, however, belies this point. Although the issue of A.M.C.'s care was not specifically alleged in the supplemental petition, the Department's status reports that were admitted into evidence without objection, as well as the court's orders, provided sufficient notice to the parents that A.M.C.'s care would be an issue for the court in evaluating A.M.C.'s best interests. For example, the Department's first report for jurisdiction and disposition indicated that the parents' acknowledged that A.M.C. needed therapy to address his mental health needs and that the Department was referring A.M.C. to the public health nurse. The February 2019 status report indicated that Father no longer believed that A.M.C. needed therapy and that the child was not affected by domestic violence between the parents because he never witnessed the conflict. The report also stated that Father had missed A.M.C.'s appointment with the public health nurse even though the appointment had been rescheduled for him. The May 2019 status report stated that A.M.C. was not current with his medical and dental appointments. The June 2019 status report stated that Father was not meeting with A.M.C.'s providers from Community Solutions and was overwhelmed caring for A.M.C. The July 2019 status report indicated that A.M.C. was not current with his medical and dental appointments and that the paternal grandparents were in the process of scheduling appointments for the child and beginning to work with A.M.C.'s providers at Community Solutions.

12

Additionally, the court's February 2019 family maintenance order specifically required both parents to ensure that A.M.C. receive therapy and regular medical and dental care. The order also required the parents to cooperate and work with the public health nurse for A.M.C.'s care. The Department's June 2019 application for a protective custody warrant to remove A.M.C. from Father specifically stated that Father had been unable to address A.M.C.'s behavioral needs because he did not respond to A.M.C.'s providers at Community Solutions.

The allegations in the amendment of S-6 are consistent with all the reports submitted by the Department in the months leading up to the hearing and the family maintenance orders of the juvenile court. The parents had ample notice that their care of A.M.C. was an issue in the case. Because the allegations in the amendment of S-6 do not "raise new issues not included in the original pleadings and upon which the adverse party *had no opportunity to defend*. [Citations.]' [Citations.]," (*Trafton, supra*, 69 Cal.2d at p. 31 (emphasis added)), we find the parents' due process rights were not violated.

### 2. *Jurisdiction and Disposition*

Father challenges the juvenile court's jurisdiction findings in S-1 through S-4 of the supplemental petition that he failed to participate in family maintenance services, did not consistently submit to drug tests, did not complete his parenting class or participate in therapy and failed to address his substance abuse issues. Mother challenges the juvenile court's finding in S-6 that she failed to properly care for A.M.C.[5]

Both parents challenge the juvenile court's disposition order removing A.M.C. from their custody.[6]

---

[5] Father does not challenge the juvenile court's finding in S-6.

[6] In her opening brief, Mother notes that A.M.C. has since been returned to her care with family maintenance services. We find the issue of A.M.C.'s removal is not moot and consider it on appeal, because the period that A.M.C. was removed from Mother counts toward the period for reunification versus family maintenance services in this dependency case. (See § 361.5, subd. (3)(A); *In re Michael S.* (1987) 188

13

### a. *Standard of Review for Jurisdiction*

A jurisdiction order is reviewed for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) The reviewing court "view[s] the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders. Issues of fact and credibility are the province of the juvenile court and [the reviewing court] neither reweigh[s] the evidence nor exercise[s its] independent judgment. [Citation.] But substantial evidence 'is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] . . . "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*Ibid.*)

### b. *Father*

Our review of the record reveals there is substantial evidence to support the juvenile court's jurisdiction findings in S-1 through S-4 of the supplemental petition as to Father. Father did not participate in therapy, and did not participate in services to address domestic violence. He did not complete a parent orientation class. He did not attend the parenting without violence class. Father told the social worker he was attending 12-step meetings; however, he did not provide the social worker with contact information for his sponsor.

In addition to his failure to participate in services, Father violated the juvenile court's orders by continuing to fight with Mother, including via text message while she was participating in her substance abuse inpatient treatment program. Father relapsed by using controlled substances, missed drug tests, and provided diluted drug tests. Finally, Father did not comply with his case plan requirements because he failed to ensure that A.M.C. was current with his medical and dental care, and did not ensure that A.M.C.

Cal.App.3d 1448, 1468, fn. 4 [reunification services may not exceed twelve months with one possible six-month extension].)

14

receive regular therapy. The juvenile court's finding that the allegations in S-1 through S-4 were true as to Father is supported by substantial evidence.

### c. Mother

We find substantial evidence in the record to support the juvenile court's true finding regarding S-6 as to Mother. The Department presented evidence in support of the added allegation that A.M.C.'s medical and mental health needs were not being met while in the parents' care, including status reports and the testimony of the social worker at the hearing that A.M.C. was not current with his medical and dental care, and was not consistently participating in therapy. A.M.C.'s therapist reported to the social worker that A.M.C. was not making progress in therapy while in his parents' care and that both Mother and Father had cancelled therapy appointments. Under the case plan, both Mother and Father were responsible for ensuring that A.M.C. was receiving proper care. The evidence demonstrates that A.M.C. was not. There is substantial evidence to support the juvenile court's true finding regarding S-6 as to Mother.

### d. Standard of Review for Disposition

We review a disposition order for substantial evidence. (*In re D.B.* (2018) 26 Cal.App.5th 320, 328 [appellate court considers entire record in reviewing dispositional findings for substantial evidence].) But a removal order at a disposition hearing must be founded upon clear and convincing evidence. (§ 361, subd. (c)(1).) Accordingly, as the California Supreme Court recently explained, where a trial court's determination was founded upon a clear and convincing evidentiary standard, a substantial evidence review of that decision is a nuanced one. "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its

15

review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent." (*In re N.M.* (2011) 197 Cal.App.4th 159, 169.) The juvenile court may consider both present circumstances as well as the parent's past conduct in determining whether removal is appropriate. (See *id.* at p. 170.) "Before the court issues a removal order, it must find the child's welfare requires removal because of a substantial danger, or risk of danger, to the child's physical health if he or she is returned home, and there are no reasonable alternatives to protect the child." (*Ibid.*) While the court has broad discretion to determine what is in the child's best interests and to fashion a dispositional order, there must be "clear and convincing evidence that removal is the only way to protect the child." (*Id.* at pp. 170-171.)

Based on our review of the record, we find substantial evidence supports the juvenile court's decision that placing A.M.C. with his parents posed a substantial risk of harm to him and that there were no reasonable means to protect A.M.C. from these harms without removal. The social worker testified at the hearing that A.M.C. was very vulnerable and needed stability and safety. It was only after A.M.C. was placed in the care of his grandparents that his mental and physical health needs were being addressed. The juvenile court cited the parents' insufficient care in its ruling on disposition, stating to Father: "[A.M.C.'s] care for his mental health and his physical health was not taken care of while he was in your care. Both you [Father] and [Mother] canceled therapy appointments so that he was not having consistent therapy." The juvenile court continued: "And it's only now that he's been solely in the paternal grandparents['] care

16

that he's now finally up-to-date on his medical and dental issues." The fact that the parents had not adequately cared for A.M.C. during family maintenance was evidence that his return at the time could be harmful to his mental and physical health.

When A.M.C. was originally placed with the parents with family maintenance services, Mother continued to use methamphetamine and had only recently achieved sobriety after completing a residential treatment program for substance abuse. When she testified at the hearing, Mother had been out of residential treatment for five days, and the social worker believed that Mother needed more stable time as a sober person before she could effectively care for and protect A.M.C. Similarly, Father had relapsed and used drugs during the proceedings and did not consistently comply with his drug testing requirement.

Father downplayed the risk of domestic violence to A.M.C.'s safety and denied that A.M.C. was suffering at all because he had never seen Father and Mother engage in a physical altercation. Father's lack of insight into A.M.C.'s needs and inability to properly care for him created a substantial risk of harm to A.M.C. if he were returned to Father's care.

While the record shows that the parents clearly loved A.M.C. and were bonded to him, they were not ready at the time of the hearing to have A.M.C. safely returned to their care. Mother was very early in her sobriety, and Father needed to further address his substance abuse issues. Moreover, both parents needed to participate in domestic violence services so they could better protect A.M.C. from harm in the future. The court's order removing A.M.C. from the parents is supported by substantial evidence.

### III.   DISPOSITION

The September 10, 2019 jurisdiction and disposition order of the juvenile court is affirmed.

17